FILED

May 17 2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0503

DA 15-0503

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 114

PACIFIC HIDE & FUR DEPOT, d/b/a
PACIFIC STEEL & RECYCLING,

   Plaintiff and Appellee,

 v.

EMINETH CUSTOM HOMES, INC.
and SHANE EMINETH,

   Defendants and Appellants.

APPEAL FROM: District Court of the Thirteenth Judicial District,
       In and For the County of Yellowstone, Cause No. DV 13-0442
       Honorable Michael G. Moses, Presiding Judge

COUNSEL OF RECORD:

   For Appellants:

      Kenneth D. Tolliver, J. Michael Ozier, Joshua P. Oie,
      Tolliver Law Firm, P.C., Billings, Montana

   For Appellee:

      Gregory R. Schwandt, Eric B. Biehl, Church, Harris, Johnson
      & Williams, P.C., Great Falls, Montana

         Submitted on Briefs: March 23, 2016

             Decided: May 17, 2016

Filed:

                          
              Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1     Emineth Custom Homes and Shane Emineth (Emineth) appeal from the District Court's judgment of July 23, 2015, entered following the jury's verdict rendered June 12, 2015. We affirm in part, reverse in part, and remand.

¶2     We restate the issue on appeal as follows:

*Whether the District Court properly entered judgment following the jury's verdict rendered June 12, 2015.*

**FACTUAL AND PROCEDURAL BACKGROUND**

¶3     In about 2011 Pacific Steel & Recycling (Pacific) set about to expand its recycling and fabrication work in Williston, North Dakota, and foresaw the need for a warehouse and a remodeled office and shop. Pacific put the warehouse project out for bids and awarded the contract to Emineth as the low bidder. An unsuccessful bidder, unhappy about not getting the warehouse job, threatened to cancel a rail siding lease with Pacific if Emineth were allowed to proceed. Pacific revoked the contract award to Emineth in order to save the rail siding, but shortly thereafter entered into two contracts with Emineth, one to renovate the office and shop and the other to build four duplexes for employee housing.

¶4     In February 2012 Emineth and Pacific signed a contract which called for Emineth to build four duplex apartment units in Williston to house Pacific's employees, for a price of approximately $1.9 million. The contract specified that Pacific would advance $474,625 to Emineth as a "down payment" upon execution of the contract. Under the contract Emineth was responsible for obtaining all necessary permits for the duplex

2

project. The project required a zoning change, which proved difficult to obtain in a timely manner, although the local Zoning Board never denied the application.

¶5 There was testimony that the down payment was designed to fund work and materials required for the duplex project, as well as Emineth's anticipated profit. Emineth testified that he used $7,000 of it to pay for engineering work on the drain field plan for the project and spent $39,000 on equipment to be used on Pacific projects in the Williston area.

¶6 In July 2012 Pacific cancelled the contract for the duplexes, contending that Emineth had not performed in a timely manner, and demanded return of the down payment. The parties agreed to a few subsequent projects that resulted in Pacific forgiving $32,000 of its claim to the down payment, but the parties did not resolve the issue. Pacific asked Shane Emineth to come to Great Falls to discuss their relationship. At that meeting Pacific demanded return of the advance payment and presented a promissory note for Emineth to sign. After consultation with an attorney, Emineth declined to sign the note. Emineth estimated that cancellation of the duplex project cost the company at least $100,000 in lost income.

¶7 In April 2013 Pacific initiated the present case by bringing an action against Emineth, stating a number of claims including breach of contract, unjust enrichment, constructive trust, and breach of the covenant of good faith and fair dealing. Pacific sought recovery of $437,625 of the down payment made to Emineth under the contract. This lesser amount recognized that Emineth was entitled to $32,000 credit arising from the other jobs done for Pacific. Emineth appeared in the action, denied liability to

3

Pacific, and counterclaimed, seeking damages from Pacific for breach of contract and other claims. Notably, when the parties signed the pretrial order, Pacific asserted claims that Emineth had been unjustly enriched in the amount of $437,625; that Emineth held at least $437,625 in constructive trust for the benefit of Pacific; and that Emineth breached the covenant of good fair and fair dealing by improperly retaining the down payment.

¶8 The parties tried the case to a jury in June 2015. Just prior to trial Pacific filed a trial brief in which it stated that it would present its claim for return of the down payment solely upon the theory of breach of contract. Pacific abandoned its other causes of action against Emineth, including the claim for unjust enrichment. Moreover, Pacific did not assert as an affirmative defense or otherwise explicitly plead the issues of offset or restitution in its answer to the counterclaim filed by Emineth.

¶9 The parties agreed to a special verdict form which limited the basis of the claims of both sides to breach of contract. The verdict asked the jury to determine whether Pacific or Emineth had breached the duplex contract and if so, the amount of damages caused. The special verdict provided (with the jury's responses):

**BREACH OF CONTRACT (AGAINST EMINETH CUSTOM HOMES)**

1. Did Emineth Custom Homes, Inc. ("ECH") breach the duplex contract with Pacific Steel and Recycling ("Pacific")? ***No***

*If "yes" proceed to Question 2. If "no" skip to Question 4.*

2. Did ECH's breach cause damages to Pacific?

*If "yes," proceed to Question 3. If "no," skip to Question 4.*

4

3. What amount of money will compensate Pacific for damages caused by ECH's breach of the duplex contract?

*Proceed to Question 4.*

**BREACH OF CONTRACT (AGAINST PACIFIC)**

4. Did Pacific breach the duplex contract with ECH? *Yes*

*If "yes" proceed to Question 5. If "no," sign this verdict form and return it to the Bailiff.*

5. Did Pacific's breach cause damages to ECH? *Yes*

*If "yes" proceed to Question 6. If "no," sign this verdict form and return it to the Bailiff.*

6. What amount of money will compensate ECH for damages caused by Pacific's breach of the duplex contract? *$238,241.00*

Pacific asserts in its brief on appeal that it offered an additional jury interrogatory that would have asked the jury to specifically determine the amount of the down payment that Emineth had to return. However, that interrogatory was not given; the parties agreed to the special verdict that was given; and Pacific does not appeal the issue.

¶10 The jury's verdict determined that Emineth did not breach the contract with Pacific, but that Pacific breached the contract with Emineth. The jury further found that Pacific's breach had caused Emineth damages of $238,241. After trial the parties could not agree upon the effect of the verdict. The District Court held a status conference with counsel, and entered judgment on the verdict in favor of Emineth for $238,241 as found by the jury. The District Court stated that the special verdict submitted to the jury was

5

"appropriate under the circumstances"; that the case was a breach of contract case; and that the jury found that Pacific had breached the contract with Emineth. The District Court further noted that the jury found that Emineth suffered damages of $238,241 from the breach.

¶11 However, the District Court added: the "Court further finds" that Emineth had already received "474,000-some-odd dollars" and that Pacific is "entitled to credit for that amount" which "is owed back by [Emineth] to Pacific." Consequently the District Court's judgment provided that the amount of the verdict in Emineth's favor was to be "deducted from the down payment of $474.625.00 previously advanced" to Emineth. The judgment entered by the District Court was that Emineth "must return $236,139.00" to Pacific, based upon the difference between the jury's award to Emineth and the amount that the District Court found that Pacific advanced to Emineth. The District Court credited Emineth with an award of costs of $245.[1]

¶12 Consequently, the District Court ordered that Emineth's jury award of $238,241 in its favor become a judgment against Emineth and in favor of Pacific for $236,139. Emineth appeals. Neither party appeals the jury's determinations that Pacific breached the contract and that Emineth did not; neither party appeals the jury's verdict that Pacific's breach caused damage to Emineth.

---

[1] The District Court failed to provide an amount for the credit that Pacific acknowledged that it owed to Emineth for work done on other projects.

**STANDARD OF REVIEW**

¶13 The parties do not dispute the jury's verdict, but rather disagree over the District Court's judgment that implements that verdict. The district court exercises its discretion to structure a special verdict and to frame the questions. The questions must be adequate to enable the jury to determine the factual issues essential to the judgment. *Kiely Const. v. Red Lodge*, 2002 MT 241, ¶ 57, 312 Mont. 52, 57 P.3d 836. We review de novo, as a conclusion of law, a district court's decision as to offsets applied to a judgment. *Cheff v. BNSF Ry. Co.*, 2010 MT 235, ¶ 25, 358 Mont. 144, 243 P.3d 1115. On appeal this Court will not speculate how the jury viewed the evidence or how it reached its decision. *Jim's Excavating v. HKM Associates*, 265 Mont. 494, 513, 878 P.2d 248, 259 (1994).

**DISCUSSION**

¶14 *Issue: Whether the District Court properly entered judgment following the jury's verdict rendered June 12, 2015.*

¶15 As noted, neither side appeals from the jury's verdict determining that Pacific breached the contract; that Emineth did not; and that the breach caused Emineth damage. It is clear that the jury did exactly what was asked of it, returning a verdict by answering the specific questions that were presented. The only issue is whether the District Court's final judgment correctly interpreted the verdict. The express effect of the District Court's judgment was a determination that Emineth owed Pacific $474,625, and that the verdict of $238,241 in Emineth's favor was an offset against the $474,625 down payment.

¶16 A special verdict must adequately cover the contested issues required to decide the controversy between the parties. *Kiely*, ¶ 57. This case began with Pacific's lawsuit

7

against Emineth, seeking return of most of the down payment. The record is clear that by the time of trial the parties did not agree as to whether Pacific was entitled to recover any of the down payment advanced to Emineth. Pacific's complaint, and its contentions in the pretrial order, sought the return of $437,625 from Emineth, not the entire original advance of $474,625 as relied upon in the District Court's judgment. The pretrial order provides that the parties contested the portion, if any, of the advance that Pacific was entitled to recover.

¶17 The parties acknowledged in the pretrial order that Emineth was entitled to credit of $32,000 against any portion of the down payment it was required to return to Pacific. The District Court did not provide, nor did the parties request that it provide, the jury with any specific instructions about Pacific's entitlement to a return of any portion of the down payment.

¶18 It is clear, both from the stipulation to give the special verdict, and from the closing arguments, that the attorneys for both sides intended that the jury's answers to the special verdict would settle the issues in the case, which by the time of trial were all based upon breach of contract. Pacific's attorney argued that if the jury found that Emineth breached the contract, the jury should award Pacific the remaining $437,625 of the down payment: "We ask that you return a verdict for Pacific that Emineth Custom Homes breached this contract, awarding $437,625 to Pacific." Pacific's attorney also argued that if the jury found that Pacific breached the contract, they should award Emineth lost profits of $125,301 "at the most." Emineth's attorney argued that the $474,625 advanced by Pacific on the duplex contract represented the money that Emineth

8

anticipated making on the entire contract, and that if Pacific breached then Emineth was entitled to keep the advance payment. Emineth's attorney also argued that if the jury found that Pacific was in breach, it "can also decide to give an allowance over and above that to Emineth . . . ." Emineth's attorney argued that it as an "all or nothing" case in which it was impossible to "split [the] baby."

¶19 At the time of trial, Pacific's only claim was that Emineth breached the duplex contract and therefore Pacific was entitled to recover the down payment. However, the jury found that Emineth did not breach the contract. Once the jury found no breach by Emineth, that was the end of Pacific's claim to a return of the down payment, and it was entitled to recover nothing from Emineth. Emineth's claim was that Pacific breached the duplex contract, and therefore Emineth was entitled to recover the damages that flowed from that breach. The jury found that Pacific breached the contract and that the damages suffered by Emineth were $238,241. Therefore, the special verdict completely resolved the case, as the attorneys argued.

¶20 The parties provide various arguments as to how the jury might have rendered the special verdict while accounting or not accounting for the down payment. However, this is all speculation as to what the verdict might mean. A verdict that specifies only the total damages does not allow a determination as to what categories or amounts of damages are included, and the Court "will not speculate when the verdict form does not explain the jury's thought process." *Murray v. Whitcraft*, 2012 MT 298 ¶ 12, 367 Mont. 364, 291 P.3d 587. It is improper for a court to speculate on the jury's thought process when it is not explained by the verdict form. *Horn v. Bull River Country Store*, 2012 MT 245, ¶ 25,

9

366 Mont. 491, 288 P.3d 218. When it is separated from the District Court's subsequent judgment, and placed in the context of the jury trial, the jury's verdict is clear.

¶21 It is inescapable that the District Court in rendering the judgment made a factual determination contrary to the verdict returned by the jury. The question of whether Emineth got to retain any portion of the down payment was clearly settled when the jury found against Pacific on its only claim, that Pacific breached the duplex contract, and when it found that Emineth did not.

¶22 When a case is tried to a jury, the jury is responsible for finding the facts required to determine the case, § 27-1-103, MCA, and must do so "in a spirit of neutrality, fairness and open-mindedness." *State v. Graves*, 274 Mont. 264, 270, 907 P.2d 963, 967 (1995). The District Court properly instructed the jury members that they were the "sole judges of the facts in this case." The jury's responsibility is to weigh evidence and resolve conflicts in it, to judge the credibility of witnesses, and to make the factual determinations necessary to render a verdict. "The court must defer to the jury's constitutionally sanctioned decisional role, and it is not the court's role to repeat the jury's tasks and retry a case or reweigh the evidence." *In the Matter of L.A.,* 2013 MT 327, ¶ 11, 372 Mont. 368, 313 P.3d 115.

¶23 As noted, neither side appeals from or contests the liability decisions that the jury made in its special verdict, that Pacific breached the contract with Emineth. Therefore, the jury's verdict in that regard stands, and for the reasons explained above, the verdict is affirmed. Emineth is entitled to recover $238,241 from Pacific and Pacific is not entitled to recover anything from Emineth. The District Court's judgment is vacated. We

10

remand to the District Court for entry of a judgment of $238,241 against Pacific and in favor of Emineth.

## CONCLUSION

¶24 This case is affirmed in part, reversed in part, and remanded for entry of a new judgment.

/S/ MIKE McGRATH

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ LAURIE McKINNON