FILED

02/22/2022

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 19-0453

DA 19-0453

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2022 MT 36

STATE OF MONTANA,

        Plaintiff and Appellee,

    v.

TOSTON GRAY LaFOURNAISE,

        Defendant and Appellant.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. BDC 2018-252
Honorable Michael F. McMahon, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Chad Wright (argued), Appellate Defender, Helena, Montana

        For Appellee:

            Austin Knudsen, Montana Attorney General, Mardell Ployhar (argued), Katie F. Schulz, Assistant Attorneys General, Helena, Montana

            Leo Gallagher, Lewis and Clark County Attorney, Katie Jerstad, Deputy County Attorney, Helena, Montana

Argued and Submitted:  December 8, 2021

Decided:  February 22, 2022

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 After a three-day trial, a jury convicted Toston Gray LaFournaise of sexual intercourse without consent (SIWOC), a felony, in violation of § 45-5-503(1), MCA; tampering with witnesses and informants, a felony, in violation of § 45-7-206(1)(b), MCA; privacy in communications, a misdemeanor, in violation of § 45-8-213(1)(a), MCA; and stalking, a misdemeanor, in violation of § 45-5-220, MCA. LaFournaise appeals.

¶2 We affirm and restate the issues as follows:

1. *Whether the District Court abused its discretion by allowing the State to file a Third Amended Information mid-trial.*

2. *Whether the District Court's jury instruction on consent warrants reversal for plain error.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 LaFournaise began sexually harassing S.S. in 2013 when she was in the sixth grade at East Valley Middle School (EVMS). Due to his ongoing and unwanted contact and sexual advances, S.S. and her parents met with school administrators which resulted in LaFournaise being suspended on several occasions. His behavior persisted, however, and in the fall of 2015, when he was fourteen, LaFournaise rode up on his bicycle to S.S. as she was walking home from volleyball practice and pushed her down, telling her he was going to hurt her. LaFournaise pulled S.S.'s shorts down and pinned her arms above her head. He took his shorts down and, using his knees to pry her legs apart, inserted his penis into her vagina. After raping her, LaFournaise cut S.S.'s thigh with a knife and warned her that, "If you tell anyone, I'll kill you." S.S. did not report the rape because she believed LaFournaise would kill her.

2

¶4 During the summer of 2016, LaFournaise repeatedly called S.S., causing her to block his calls on her phone. S.S. also transferred to Jefferson County High School so she could avoid LaFournaise; however, she told her mother it was because she wanted to attend a smaller school. On March 1, 2017, S.S. received a call from LaFournaise on her new phone; she had not blocked LaFournaise's number on the new phone because she did not have the number. LaFournaise told S.S. he planned to rape her again and impregnate her. S.S. was terrified. Following the phone call, S.S. sought a temporary restraining order against LaFournaise. Law enforcement learned S.S. had disclosed being raped by LaFournaise to her therapist and school counselor. Based on this information, law enforcement set up a forensic interview with S.S. and she underwent medical testing.

¶5 The State's first Information in May 2018 charged LaFournaise with SIWOC, in violation of § 45-5-503(1), MCA (Count I), privacy in communications, in violation of § 45-8-213(1)(a), MCA, and stalking, in violation of § 45-5-220, MCA. In February 2019, the State moved to amend the Information. The State's First Amended Information amended Count I to include § 45-5-503(3)(a), MCA, after the State learned LaFournaise slashed S.S.'s leg with a knife. The State further added one charge of tampering with witnesses, in violation of § 45-7-206(1)(b), MCA (Count II), after learning that LaFournaise threatened to kill S.S. if she disclosed the rape. The First Amended Information retained the privacy in communications (Count III) and stalking charges (Count IV). Approximately one week after the First Amended Information, the State again sought leave to amend the Information. The State's Second Amended Information amended Count I to aggravated SIWOC, in violation of § 45-5-508, MCA, and retained

3

Counts II-IV.[1]  LaFournaise was arraigned on the Second Amended Information and trial began on March 18, 2019.

¶6     At trial, LaFournaise's opening argument framed LaFournaise's conduct as an innocent crush, to which S.S. overreacted.  Defense counsel argued the impossibility of LaFournaise having access to S.S. because of how far away LaFournaise lived and his lack of transportation.  The State's case-in-chief consisted of testimony from the following witnesses: Sergeant Uriah Wood of the Lewis and Clark County Sheriff's Office; S.S.; Joseph Michaud, S.S.'s counselor at high school; Kevin VanNice, S.S.'s counselor at EVMS; Dr. Callie Riggin, who performed a post-disclosure medical examination on S.S.; S.S.'s mother; Detective William Pandis of the Lewis and Clark County Sheriff's Office; and Dr. Wendy Dutton, testifying as a blind expert on sexual violence.

¶7     S.S. testified to persistent, unwelcome sexual harassment by LaFournaise starting during her sixth grade year at EVMS.  LaFournaise's advances toward S.S. culminated in August 2015, her eighth grade year at EVMS.  S.S. testified that, as she was walking home from volleyball practice at EVMS, LaFournaise rode up on a bicycle, grabbed her, threw her to the ground, and "put his penis inside of [her]."  S.S. testified that she never consented to LaFournaise's actions, and she believed LaFournaise would kill her if she disclosed the incident.  S.S. additionally testified to how the 2015 incident negatively impacted her grades and that LaFournaise's sexual harassment caused her to self-harm.  LaFournaise's

---

[1] Section 45-5-508, MCA, imposes a harsher penalty, requiring a mandatory minimum of ten years in prison, while § 45-5-503(3)(a) imposes a minimum of four years.

cross-examination of S.S. focused primarily on inconsistencies between S.S.'s trauma narrative completed during the forensic interview and her trial testimony.

¶8 At the end of the first day of trial, the District Court raised concerns over Count I and the effective date of § 45-5-508, MCA:

> My reading of the statute is that that statute became effective October 1st, 2017, and it applies to crimes committed on or after the effective date of the act. That's my interpretation of the legislative research, so anticipate a directed motion for directed verdict. I would like that addressed.
>
> I heard testimony today and even in the Information that it alleges the act of aggravated sexual intercourse without consent. It was committed at the end of August 2015 or until early September 2015. I have no act to-date after October 1st, 2017. So I expect -- I would like that addressed.

The State filed a bench brief presenting the District Court with the following options: (1) grant LaFournaise's motion for a directed verdict respecting Count I and allow the jury to deliberate on Counts II-IV, (2) permit the State to amend back to and proceed under the First Amended Information alleging SIWOC in violation of § 45-5-503(1) and (3)(a), MCA, or (3) allow the State to amend the Second Amended Information as to form by reducing Count I from aggravated SIWOC under § 45-5-508, MCA, to SIWOC, in violation of § 45-5-503(1) and (3)(a), MCA.

¶9 The District Court allowed the State to argue these options at the beginning of the second day of trial. The State noted amendments as to substance must come five days before trial. The State argued, under § 46-11-205(3), MCA, an Information may be amended at any time before a verdict is issued if no additional or different offense is charged and the substantial rights of the defendant are not prejudiced. The State contended amending Count I to SIWOC under § 45-5-503(1) and (3)(a), MCA, constituted a lesser

5

included offense of aggravated SIWOC under § 45-5-508, MCA. The District Court questioned the State on how there could be a lesser included offense to an invalid charge and clarified that LaFournaise had been arraigned on each information, including the first Information charging SIWOC in violation of § 45-5-503(1) and the First Amended Information charging SIWOC in violation of § 45-5-503(1) and (3)(a), MCA. Defense counsel objected, contending "[LaFournaise is] charged with aggravated sexual intercourse without consent, and that is how we have structured our defense." Defense counsel further argued an amendment would prejudice LaFournaise and LaFournaise "has the right to be told what he is charged with and what the penalties are." Defense counsel additionally expressed concerns over jury confusion should the State amend Count I. The District Court recognized LaFournaise's strategy but responded its "job is to make sure that each party has a fair trial."

¶10 The District Court ruled it would not allow the State to amend Count I to § 45-5-503(3)(a), MCA, "because the proof that was adduced in the testimony would establish bodily injury well above and beyond that anticipated by the defense . . . [and] it prejudices the defendant with respect to his defense." The District Court ruled that Count I charging aggravated SIWOC under § 45-5-508, MCA, "is gone. . . . [and] an invalid charge because that statute was enacted October 1st, 2017, and it applies to crimes that occurred on or after that date." Ultimately, the District Court determined the State could amend Count I to § 45-5-503(1), MCA, noting "the elements of the crime and the proof required remain the same, and the defendant is informed of the charges against him." Thus, the

6

State filed a Third Amended Information, amending Count I to SIWOC, in violation of § 45-5-503(1), MCA, and retaining Counts II-IV.

¶11 After the District Court's ruling, LaFournaise testified on his own behalf. He testified to having a crush on S.S. and asking her out repeatedly, but claimed the crush only lasted until he graduated eighth grade. He admitted slapping S.S.'s buttocks without her consent and attempting to kiss her, which he characterized on cross-examination as being done in an "aggressive manner" and as an "urge." He further admitted to calling S.S. on occasion but claimed the calls were innocent in nature. LaFournaise also testified that he relied on the school's buses for transportation because he lived far from the school. He stated he received his first bicycle for Christmas in 2015 and denied riding a bike around East Helena or returning to EVMS after graduating eighth grade. LaFournaise introduced no other witnesses.

¶12 LaFournaise did not propose any jury instructions and did not object to the State's proposed jury instruction on consent. The District Court presented its revised jury instructions to the parties. LaFournaise offered no objections. Pertinent to LaFournaise's appeal, the jury received the following instructions on consent:

> No. 22: As used in these instructions, the term 'consent' means words or overt actions indicating a freely given agreement to have sexual intercourse or sexual contact.
> An expression of lack of consent through words or conduct means there is no consent or that consent has been withdrawn.
> A current or previous dating or social or sexual relationship by itself, or the manner of the dress of the person involved with the Defendant in the conduct at issue does not constitute consent.
> Lack of consent may be inferred based on all of the surrounding circumstances and must be considered in determining whether a person gave consent.

7

No. 23: A 'person who is incapable of consent' means a person who is overcome by deception, coercion, or surprise.

¶13 The State's closing argument reminded the jury of its burden of proof and contended sufficient evidence had been presented to return a guilty verdict on all four counts. LaFournaise's closing focused on his lack of transportation, the inconsistency of when S.S. began self-harming, and implied the negative impacts on S.S.'s grades and behaviors were "probably not hugely uncommon in girls that age."

¶14 Before jury deliberations, the District Court informed the parties of its amendment to the jury verdict form, noting "Count 1 is the sexual intercourse without consent, and I took out any question relating to Count 1 because there is no sentence enhancement with respect to that charge." The District Court informed the parties that, should the jury reach an impasse, it would give Instruction No. 49, terming it the "dynamite instruction." Neither party objected to the District Court's proposal of Instruction No. 49. During deliberations, the jury informed the District Court it had reached a verdict but was not unanimous on all counts. The jury's verdict form later indicated it was not unanimous as to Counts I and II. The District Court gave Instruction No. 49, and after additional deliberations, the jury unanimously found LaFournaise guilty of all four counts. The District Court sentenced LaFournaise to sixteen years with no time suspended for Count I and four years with no time suspended for Count II, to run consecutively. The District Court additionally sentenced LaFournaise to six months on Count III and one year on Count IV, to run concurrently with Count I.

**STANDARD OF REVIEW**

¶15 We review a district court's decision to allow an amendment to an information for an abuse of discretion. *State v. Hardground*, 2019 MT 14, ¶ 7, 394 Mont. 104, 433 P.3d 711. A district court abuses its discretion when it acts arbitrarily without the employment of conscientious judgment or exceeds the bounds of reason, resulting in substantial injustice. *Hardground*, ¶ 7.

¶16 District courts possess broad discretion in formulating jury instructions, and we will not reverse on the basis of its instructions absent an abuse of discretion that prejudicially affects a defendant's substantial rights. *State v. Daniels*, 2019 MT 214, ¶ 26, 397 Mont. 204, 448 P.3d 511. We review jury instructions to determine whether the instructions fully and fairly instruct the jury on the applicable law. *Daniels*, ¶ 26. We generally decline to consider issues raised for the first time on appeal when the appellant had the opportunity to make an objection at trial. *Daniels*, ¶ 24. "Failure to make a timely objection during trial constitutes a waiver of the objection . . . ." Section 46-20-104(2), MCA.

¶17 We review for plain error sparingly, on a case-by-case basis, considering the totality of the circumstances of each case. *State v. George*, 2020 MT 56, ¶ 5, 399 Mont. 173, 459 P.3d 854. We may invoke this standard of review when a criminal defendant's fundamental rights are implicated and the failure to review the alleged error may result in "a manifest miscarriage of justice, may leave unsettled the question of the fundamental fairness of the trial or proceedings, or may compromise the integrity of the judicial process." *State v. Akers*, 2017 MT 311, ¶ 13, 389 Mont. 531, 408 P.3d 142 (citations

omitted). The appealing party "bears the burden of firmly convincing this Court" of the necessity to invoke plain error review. *George*, ¶ 5.

## DISCUSSION

¶18 *1. Whether the District Court abused its discretion by allowing the State to file a Third Amended Information mid-trial.*

¶19 An information is a written accusation of criminal conduct prepared by the State and must reasonably apprise the accused of the charges against them so they have an opportunity to prepare and present their defense. *Hardground*, ¶ 9. Section 46-11-205, MCA, provides for an amendment to an information as follows:

> (1) The court may allow an information to be amended in matters of substance at any time, but not less than 5 days before trial, provided that a motion is filed in a timely manner, states the nature of the proposed amendment, and is accompanied by an affidavit stating facts that show the existence of probable cause to support the charge as amended. A copy of the proposed amended information must be included with the motion to amend the information.
> (2) If the court grants leave to amend the information, the defendant must be arraigned on the amended information without unreasonable delay and must be given a reasonable period of time to prepare for trial on the amended information.
> (3) The court may permit an information to be amended as to form at any time before a verdict or finding is issued if no additional or different offense is charged and if the substantial rights of the defendant are not prejudiced.

As such, a mid-trial amendment is only permissible when the amendment applies to matters of form, not substance, and does not prejudice the defendant's substantial rights. *State v. Hallam*, 175 Mont. 492, 500, 575 P.2d 55, 60-61 (1978).

¶20 An amendment is one of form when the same crime is charged, the elements of the crime and proof required remain the same, and the defendant is informed of the charges against him. *City of Red Lodge v. Kennedy*, 2002 MT 89, ¶ 11, 309 Mont. 330, 46 P.3d 602

10

(citing *State v. Sor-Lokken*, 247 Mont. 343, 349, 805 P.2d 1367, 1371 (1991)). Conversely, an amendment is substantive when it alters the nature of the offense, the essential elements of the crime, the proofs or the defenses. *Kennedy*, ¶ 14.

¶21 Our cases regarding amendments of information indicate the query remains case-specific and fact-intensive. In *State v. Scheffer*, the State originally charged Scheffer with tampering with physical evidence, in violation of § 45-7-207, MCA. 2010 MT 73, ¶ 9, 355 Mont. 523, 230 P.3d 462. Seven days before trial, the State moved to amend this charge to attempted tampering with physical evidence, in violation of §§ 45-4-103 and 45-7-207, MCA. *Scheffer*, ¶ 10. We concluded this constituted an amendment to form, not substance. *Scheffer*, ¶ 37. We noted the underlying facts were identical, "the nature of the offense was the same, the essential elements of the crime remained the same, and there is no indication that the proofs or the defenses changed in response to the amendment." *Scheffer*, ¶ 39. We further noted the minimal effect on the State's burden of proof and the lack of "new allegations of additional or different instances of criminal conduct." *Scheffer*, ¶ 39. We rejected Scheffer's unsupported "bald assertions" regarding the amendment's prejudice to his defense, remarking "there is no indication that Scheffer was precluded in any way from presenting" his defense strategy. *Scheffer*, ¶ 40. Our conclusion additionally considered that the amendment imposed no greater punishment on Scheffer. *Scheffer*, ¶¶ 40-41. The addition of a new statutory section in *Scheffer* failed to convince us the amendment was one of substance.

¶22 We have consistently recognized the specific acts charged control and that an incorrect statutory citation, where the information fully apprises the defendant of the facts,

11

nature, and elements of the offense, constitutes an amendment of form, not substance. *State v. Romero*, 279 Mont. 58, 77-78, 926 P.2d 717, 729 (1996); *State v. Moehr*, 227 Mont. 253, 256, 738 P.2d 499, 501 (1987); *State v. Handy*, 221 Mont. 365, 368-69, 719 P.2d 766, 768 (1986). Likewise, amending the information to track statutory language and allege "serious bodily injury" instead of "bodily injury" constituted an amendment of form rather than substance and imposed a "heavier burden" on the State. *State v. Matson*, 227 Mont. 36, 42-43, 736 P.2d 971, 974-75 (1987). In *State v. Allen*, the State's information at the beginning of trial charged Allen with aggravated burglary, aggravated assault against one victim, and assault against another victim. 278 Mont. 326, 330, 925 P.2d 470, 472 (1996). Both victims were present in the dwelling alleged to have been burglarized. *Allen*, 278 Mont. at 330, 925 P.2d at 472. After its case-in-chief, the State amended the information to identify which victim it was associating with the aggravated burglary, thus changing the basis of the aggravated burglary charge. *Allen*, 278 Mont. at 331, 925 P.2d at 473. We rejected Allen's contentions that the amended information changed the nature of the charge and lowered the State's burden of proof, holding that the amendment "did not relieve the State of the burden of proving any of the elements" and the changes "were merely of form and not substance[.]" *Allen*, 278 Mont. at 331-32, 925 P.2d at 473.

¶23 In *State v. Clark*, the State originally charged Clark with possession of methamphetamine. 1998 MT 221, ¶ 43, 290 Mont. 479, 964 P.2d 766. Approximately one month before trial, the State amended the information to change the drug identified from methamphetamine to amphetamine. *Clark*, ¶ 43. On appeal, Clark contended, because the

12

State had to prove possession of a different drug under the amended information, the amendment was substantive and changed the elements of the crime. *Clark*, ¶ 45. We rejected these arguments, concluding, despite the change in the specifically identified drug, the amendment was to form because "the crime charged remained the same, the elements of the crime remained the same, [and so] did the required proof." *Clark*, ¶ 52. Implicit in *Clark* is the State's inability to prove the crime charged in the original information.

¶24　However, the case-specific nature of our inquiry has occasionally led us to the opposite conclusion. In *State v. Brown*, the State originally charged Brown with aggravated assault by purposely causing serious bodily injury. 172 Mont. 41, 44-45, 560 P.2d 533, 535 (1976). The State's amended information, filed 34 days before trial, changed the statutory subsection to allege aggravated assault by causing reasonable apprehension of serious bodily injury by use of a weapon. 172 Mont. at 43, 560 P.2d at 534. We concluded the essential elements were different and the amendment was one of substance because the amended information "contained a new and different offense." 172 Mont. at 45, 560 P.2d at 535. *See also State v. Spotted Eagle*, 2010 MT 222, ¶ 11, 358 Mont. 22, 243 P.3d 402 (concluding the district court abused its discretion when it improperly substantively amended the charges against Spotted Eagle through jury instructions). *Brown* remains distinct from this case as a matter of pure statutory interpretation. At the time *Brown* was decided, and key to our holding, amendments as to substance were only permitted *before* the defendant pleaded, rendering it distinguishable from the current requirements of § 46-11-205, MCA, which requires substantive changes

13

occur no later than five days before trial. 172 Mont. at 45-46, 560 P.2d at 535; *see* § 95-1505, R.C.M. (1947).

¶25 Our decision in *Hallam* is likewise distinguishable for the same reason. 175 Mont. at 500, 575 P.2d at 60-61. In *Hallam*, we relied on our holding in *Brown*, with minimal additional analysis, to reverse the district court's decision to permit an amendment to a different statutory subsection on the opening day of trial. 175 Mont. at 499-500, 575 P.2d at 61. The amendment in *Hallam* completely altered the arson charge against the defendant, changing the charge from knowingly or purposely damaging or destroying an occupied structure by means of fire, in violation of § 94-6-104(1)(a), R.C.M. (1947), to knowingly or purposely placing three individuals in danger of death by means of fire, in violation of § 94-6-104(1)(b), R.C.M. (1947). *Hallam*, 175 Mont. at 499-500, 575 P.2d at 61. We have similarly concluded, where the State filed an amended complaint the day before trial alleging several new instances of stalking that the State could prove under either statutory subsection, the amendment constituted one of substance, not form. *Kennedy*, ¶¶ 15-16. In *Kennedy*, the State filed an amended complaint the morning of trial alleging several new instances of stalking. *Kennedy*, ¶¶ 6, 16. We noted the possibility that, under the amended complaint, Kennedy could be convicted of stalking without proof of the facts that served as the basis for the original complaint. *Kennedy*, ¶ 15. We concluded this fact, combined with the addition of several new allegations of stalking, constituted a substantive change that added new proofs to the State's burden and required Kennedy to prepare new defenses. *Kennedy*, ¶¶ 15-16.

14

¶26     In *Hardground*, the State initially charged Hardground with failure to provide notice of change of residence, which requires an offender to register within three business days of establishing a new residence. *Hardground*, ¶¶ 3, 13; § 46-23-504(1)(c), MCA. The State's information alleged the offense occurred on December 19, 2013. *Hardground*, ¶ 3. Following preliminary jury instructions, the State moved to amend the information to reflect the proper date of the offense as August 5, 2014, characterizing the correction as a typographical error. *Hardground*, ¶ 4. On appeal, we noted that "an amendment to the date might ordinarily constitute an amendment of form," but concluded the number of days within which an offender must register is an element of the offense charged. *Hardground*, ¶ 17. The difference of several months between the initial information and the amended information constituted a substantive change because it "changed the facts and acts" for which Hardground was charged. *Hardground*, ¶ 17. We further noted, like *Kennedy*, "Hardground could be convicted of the underlying offense . . . without proof of the allegation contained in the Information the State used up until the morning of trial." *Hardground*, ¶ 17.

¶27     LaFournaise contends the amendment constituted one of substance, not form, because it altered the consent element and "radically changed the available defenses." LaFournaise further contends that, because the amendment was substantive, the State's mid-trial amendment proves untimely and requires reversal. The facts here lead us to conclude the amendment of Count I constituted one of form, not substance.

¶28     Here, unlike in *Kennedy*, *Hallam*, and *Brown*, the nature of the offense and the essential elements remained the same. Section 45-5-503(1), MCA, requires the State prove

15

the following elements of SIWOC: a person (1) knowingly (2) has sexual intercourse (3) with another person without consent. Section 45-5-508(1), MCA, requires the State prove the same elements of SIWOC along with the aggravating circumstance of the defendant using force. The District Court noted, without use of force, the essential elements of each offense remained the same. The Third Amended Information added no additional element and removing the use of force failed to lessen the State's burden of proof concerning the remaining elements. Unlike *Hallam*, the State's amendment did not alter the charge against LaFournaise. Here, like *Clark*, the criminal offense and the elements the State was required to prove remained the same.

¶29 Unlike *Kennedy* and *Hardground*, the Third Amended Information contained no new or different allegations of criminal conduct. The Third Amended Information failed to change "the facts and acts" for which LaFournaise was charged. *See Hardground*, ¶ 17. LaFournaise could not be convicted without proof of the same facts alleged in the previous iterations of the information. As the District Court noted, LaFournaise was aware of the charges and the underlying facts. Like *Scheffer*, the Third Amended Information did not expose LaFournaise to a greater punishment. *See Scheffer*, ¶¶ 40-41; *compare* § 45-5-508(2), MCA, *with* § 45-5-503(2), MCA (2015). Like *Scheffer*, the State's amendment charged a different statutory section. This change had no impact on the State's burden of proof because it did not relieve the State of the burden of proving any of the essential elements of SIWOC. *See Allen*, 278 Mont. at 331-32, 925 P.2d at 473. The District Court noted the proof would remain the same and instructed the jury that the State's burden was to prove each element of the SIWOC charge beyond a reasonable doubt.

16

Contrary to *Kennedy*, the State did not charge LaFournaise in a broad manner allowing conviction under multiple statutory subsections. Here, the State's Third Amended Information charged LaFournaise under § 45-5-503(1), MCA (2015), as it had previously charged in the first Information and First Amended Information, and LaFournaise could only be convicted if the State met its burden of proving every element of § 45-5-503(1), MCA (2015).

¶30 Citing *State v. Newrobe*, 2021 MT 105, 404 Mont. 135, 485 P.3d 1240, LaFournaise additionally contends the State's amendment secured "an obvious tactical advantage" over him. LaFournaise's reliance on *Newrobe* proves unavailing. In *Newrobe*, the State originally alleged Newrobe committed incest by having sexual intercourse with his niece. *Newrobe*, ¶ 3. The district court informed the parties that a "descendant" as it pertained to incest did not cover an uncle-niece relationship. *Newrobe*, ¶ 5. As "descendant" failed to cover the alleged conduct, the State faced a factual impossibility in proving its case against Newrobe. The morning of trial, the district court informed the parties his court reporter had a major medical issue and that he was granting a mistrial. *Newrobe*, ¶ 6. Newrobe objected and moved to dismiss the charges with prejudice due to the State's inability to prove Newrobe's niece was a descendant. *Newrobe*, ¶ 7. The district court granted a mistrial over objection, and less than one week later, the State filed an amended information changing the incest charge to SIWOC, eliminating the factual impossibility. *Newrobe*, ¶ 8. The dispositive issue on appeal in *Newrobe* was whether the district court abused its discretion in declaring a mistrial and erred in concluding double jeopardy did not bar Newrobe's second trial under the amended information. *Newrobe*, ¶ 2. The

17

mistrial, not the amended information, "secured to the State" the tactical advantage LaFournaise cites and allowed the State to refile its information and avoid the factual impossibility. *Newrobe*, ¶ 15. *Newrobe* has no bearing here.

¶31 Nor can we say a new offense was charged because of the different statutory sections. In 2017, the legislature passed Senate Bill 29 (SB 29), revising the laws relating to sexual crimes. SB 29 amended the definition of consent and created the offense of aggravated SIWOC under § 45-5-508, MCA. Aggravated SIWOC requires the presence of the aggravating factor of the use of force. Section 45-5-508(1), MCA. Before SB 29, the use of force was included in the statutory definition of "without consent" and thus inherent to the State's burden of proof. *See* § 45-5-501(1)(a)(i), MCA (2015). SB 29's proponents cited the difficulty of prosecuting SIWOC cases lacking the use of force. Proponents of SB 29 noted the bill "doesn't change what we have to prove as prosecutors. We still have to prove that a defendant knows he's having intercourse and that he knows he's acting without consent." SB 29, 65th Leg., Reg. Sess. (2017); *Senate Judiciary Committee Hearing Minutes in re SB 29*, 8:45:05-8:45:23 (Jan. 6, 2017). SB 29 removed the necessity of proving the use of force from SIWOC cases under § 45-5-503(1), MCA. Instead, the use of force was relocated to a new statutory section and characterized as an aggravating factor to SIWOC under § 45-5-503(1), MCA.[2]

---

[2] Montana provides for aggravating circumstances under several other criminal statutes. *Compare* § 45-5-201, MCA (assault) *with* § 45-5-202, MCA (aggravated assault; "The elements of assault generally must be present in addition to the aggravating factor of causing serious bodily injury[.]" Section 45-5-202, MCA, *Annotations*, Comm'rs Note (2013)); *compare* § 45-5-302, MCA (kidnapping) *with* § 45-5-303, MCA (aggravated kidnapping); *compare* § 45-5-602, MCA (promoting prostitution) *with* § 45-5-603, MCA (aggravated promotion of prostitution); *compare*

¶32 The amendment here did not constitute a new offense. The State consistently charged LaFournaise with SIWOC through each iteration of its several informations. The State's Second Amended Information charged aggravated SIWOC under § 45-5-508, MCA, which requires a court to impose a mandatory minimum sentence of ten years. This is greater than § 45-5-503(1), MCA (2015), which provided a mandatory minimum sentence of two years and had a maximum sentence of 100 years, or the four-year mandatory minimum sentence under § 45-5-503(3)(a), MCA. The District Court recognized the aggravating factor offered by the State under § 45-5-508, MCA, was unlawful and allowed the State to amend its information, remove the aggravating factor, and avoid any possibility of an invalid conviction. The District Court removed all mention of the improperly charged aggravating factor from the jury instructions and verdict form. The distinction between the State's charging decisions and treatment of the use of force as an aggravating factor distinguishes the instant case further from *Hardground* and its forebearers, where the State's amendments changed the elements of the offense or the underlying facts. No additional or different offense was charged. The State's amendment constituted one of form, not substance, removing the invalid aggravating factor. Having concluded the State's mid-trial amendment was one of form, we must now consider, as required by § 46-11-205(3), MCA, "if the substantial rights of the defendant are . . . prejudiced."

---

§ 45-5-631, MCA (interference with parent-child contact) *with* § 45-5-632, MCA (aggravated interference with parent-child contact).

¶33 We have consistently rejected arguments that an amended information as to form may prejudice a defendant's trial strategy. *See Scheffer*, ¶ 40; *State v. Gardipee*, 2004 MT 250, ¶¶ 8-9, 323 Mont. 59, 98 P.3d 305 (rejecting Gardipee's assertion that, had he known of the amended information imposing a harsher penalty, "plea bargaining and trial strategy may have taken a different course."). Nor have we found prejudice where the defendant has been clearly apprised of the facts and charges against him. *See Gardipee*, ¶ 9; *State v. Yecovenko*, 2004 MT 196, ¶ 32, 322 Mont. 247, 95 P.3d 145; *Allen*, 278 Mont. at 332, 925 P.2d at 473; *Handy*, 221 Mont. at 368-69, 719 P.2d at 768.

¶34 LaFournaise provides no meaningful explanation for how his defense strategy was impacted beyond "bald assertions." *See Scheffer*, ¶ 40. Nothing precluded LaFournaise from his preferred trial strategy of moving for a directed verdict. LaFournaise did, in fact, move for a directed verdict on Counts I and II. No constitutional right exists that guarantees a successful directed verdict, and district courts retain discretion over such motions. *See, e.g., State v. McCarthy*, 1999 MT 99, ¶ 13, 294 Mont. 270, 980 P.2d 629. On appeal, LaFournaise contends defense counsel had to "pivot" after the State's case-in-chief. LaFournaise's defense was not based on the "use of force" element present in aggravated SIWOC, but rather on his lack of transportation to EVMS. LaFournaise provides no further clarification as to where defense counsel had to "pivot."

¶35 LaFournaise additionally characterizes defense counsel's opening argument asking the jury to keep an open mind and arguing that "we believe that there will be evidence that contradicts what this girl has said" as purposefully "vague because she knew [Count I] was invalid." This post hoc characterization carries little weight and demonstrates no prejudice

20

to LaFournaise. The record indicates defense counsel was aware of the invalidity of Count I as to aggravated SIWOC and intended to move for a directed verdict. However, throughout trial, defense counsel consistently framed LaFournaise's interactions with S.S. as a crush and focused on LaFournaise's lack of transportation to EVMS in August 2015. LaFournaise presents no evidence supporting his "vague" characterization of defense counsel's argument. The record bears no indication of prejudice to LaFournaise's substantial rights.

¶36 Finally, we must be guided by our standard of review in assessing the District Court's decision to allow the State to file its Third Amended Information. The District Court was placed in the unenviable position of trying to ensure a fair trial for both the State and defense while assessing the gravity of the State's charging error for a tragic and serious felony offense. A district court abuses its discretion when it acts arbitrarily without the employment of conscientious judgment or exceeds the bounds of reason, resulting in substantial injustice. *Hardground*, ¶ 7. Here, the District Court itself raised concerns over the SIWOC charge, invited briefing and arguments from the parties, considered its options for salvaging the trial and which options were fair to LaFournaise, and conscientiously employed its judgment to address the State's error. The following is one of the many exchanges the District Court had with the parties:

[District Court]: What is a lesser included offense to an invalid charge?

[State]: Well, Your Honor, we have an offense which didn't exist in the code until October 2017.

21

However, prior to that, we had offenses in the code which were identical in terms of the elements. However, the new offense, I'll call it, "New rape," the aggravated SIWOC offense --

.    .    .

The new -- the new offense encompasses all of the elements of what was the older offense or what has been on the books for a long time, which is sexual intercourse without consent. And under a subsection of that, 45-5- --

[District Court]: Again, my question is, what is a lesser included offense to an invalid charge?

.    .    .

Here, we have a charge that's invalid, a charge that was made for an act committed before the statute went into effect. I looked at the issue last night as well. I tried to determine if -- I mean, the State can move for a lesser included offense. Either party can move under the statute.

But one of the requirements to get a lesser included offense, the first criteria is the first – is, first, the offense must actually constitute a lesser included offense of the offense charged. I'm not aware of a lesser included offense to the offense charged in the second amended Information because it's an invalid charge.

So to me it's almost like you're trying to bootstrap. 'I can't get a lesser included in, so I'm just going to amend the Information.'

Based on this record, we conclude the District Court did not act arbitrarily or without the employment of conscientious judgment. The District Court's decision was not only reasonable, but it was legally correct and it did not result in any injustice to LaFournaise.

¶37    *2. Whether the District Court's jury instruction on consent warrants reversal for plain error.*

¶38    LaFournaise contends the District Court's Instruction No. 22, based on the 2017 statutory definition of consent, implicates several fundamental rights. LaFournaise made no objection at trial to Instruction No. 22 and we therefore can only review LaFournaise's

22

unpreserved claim by exercising plain error review. We may invoke this standard of review when a criminal defendant's fundamental rights are implicated. *Akers*, ¶ 13. We conclude the alleged error did not implicate any of LaFournaise's fundamental rights.

¶39 LaFournaise argues Instruction No. 22 relieved the State of its burden to prove every element of the charged offense, thus implicating his fundamental rights to due process and a fair trial. LaFournaise additionally contends Instruction No. 22 constituted an ex post facto application of the law. SB 29 amended § 45-5-501(1), MCA, to define "consent" as follows:

> (1)(a) As used in 45-5-502, 45-5-503, and 45-5-508, the term 'consent' means words or overt actions indicating a freely given agreement to have sexual intercourse or sexual contact and is further defined but not limited by the following:
> (i) an expression of lack of consent through words or conduct means there is no consent or that consent has been withdrawn;
> (ii) a current or previous dating or social or sexual relationship by itself or the manner of dress of the person involved with the accused in the conduct at issue does not constitute consent; and
> (iii) lack of consent may be inferred based on all of the surrounding circumstances and must be considered in determining whether a person gave consent.

The 2017 amendment required a broader inquiry into the nature of consent than the 2015 definition, which defined "without consent" as "the victim is compelled to submit by force against the victim or another." Section 45-5-501(1)(a)(i), MCA (2015). Both the 2015 and 2017 definitions provided several categories in which "the victim is incapable of consent" including, where the victim is overcome by deception, coercion, or surprise. Section 45-5-501(1)(a)(ii)(C), MCA (2015); § 45-5-501(1)(b)(iii), MCA (2017).

23

¶40 We have previously noted "there is no question that ex post facto application of the law, if present" violates fundamental constitutional rights. *State v. Price*, 2002 MT 284, ¶ 24, 312 Mont. 458, 59 P.3d 1122. However, when a party claims ex post facto application of a law, "the relevant inquiry is whether retroactive application of a particular change in the law creates a sufficient risk of increasing the measure of punishment attached to the covered crimes." *State v. Goebel*, 2001 MT 155, ¶ 26, 306 Mont. 83, 31 P.3d 340 (citations and internal quotations omitted).

¶41 Jury Instruction No. 19 expressly instructed the jury of the elements of SIWOC and the State's burden of proving each element beyond a reasonable doubt. The State reminded the jury of its burden of proof during closing arguments. In addition to Jury Instruction No. 22, Jury Instruction No. 23 defined a "person who is incapable of consent" as one "who is overcome by deception, coercion, or surprise." This definition remains consonant with § 45-5-501(1)(a)(ii)(C), MCA (2015). S.S.'s testimony that LaFournaise suddenly appeared and grabbed her from behind supported the jury finding deception, coercion, or surprise. The jury was fully aware of the State's burden of proving each element beyond a reasonable doubt. Jury Instruction No. 23 provided the applicable definition of a person who is incapable of consent. The 2017 amendments did not affect the relevant statutory categories here. On appeal, LaFournaise alleges no error with Jury Instruction No. 23 beyond characterizing it as "bizarre" in a passing reference. We have long noted that juries are presumed to follow the law provided by courts. *State v. Favel*, 2015 MT 336, ¶ 28, 381 Mont. 472, 362 P.3d 1126. LaFournaise presents no evidence to overcome this presumption.

¶42 Moreover, the parties understood the State met its burden of proving LaFournaise used force as required by the 2015 definition of consent. The District Court cited the testimony proving bodily injury, included in the definition of "force" located in § 45-5-501(2)(a), MCA (2015), as its reasoning for prohibiting the State from amending Count I to § 45-5-503(3)(a), MCA. Restated, the State proved a lack of consent under both the 2015 and 2017 definitions. Jury Instruction No. 22 neither relieved the State of its burden of proof nor reduced the burden of proof and thus fails to implicate LaFournaise's right to due process and a fair trial. Nor can we say Instruction No. 22 constituted an ex post facto application of the law. The 2017 amendments to the definition of consent neither increased nor decreased the penalty for SIWOC. *See Goebel*, ¶ 26.

¶43 LaFournaise points to our decisions in *City of Missoula v. Zerbst*, 2020 MT 108, 400 Mont. 46, 462 P.3d 1219, and *State v. Resh*, 2019 MT 220, 397 Mont. 254, 448 P.3d 1100, to argue the District Court committed reversible error by instructing the jury on the 2017 definition of consent. These cases are distinguishable and fail to convince us the District Court committed plain error. In both cases, the defendants were convicted of sexual assault. *Zerbst*, ¶ 1; *Resh*, ¶ 1. The primary issue in both cases was whether the victims were incapable of consent to sexual assault, not SIWOC, because they fell in one of the statutory categories created in 2017 of "a person incapable of consent." *Zerbst*, ¶ 13; *Resh*, ¶ 9.

¶44 In *Zerbst*, the City charged Zerbst with misdemeanor sexual assault. *Zerbst*, ¶ 2. Over Zerbst's objection, the municipal court instructed the jury that a victim is incapable of consent if the victim is mentally disordered or incapacitated. *Zerbst*, ¶ 13. The City

25

elicited testimony highlighting the victim's diagnoses and reminded the jury of the victim's disabilities during closing argument. *Zerbst*, ¶ 22. We concluded the municipal court did not fully and fairly instruct the jury because the instruction allowed the jury to find the victim incapable of consent if it found she met the categorical rule provided and excused the jury from looking at the evidence as a whole and resolving the factual dispute over consent. *Zerbst*, ¶¶ 24-25. We noted "the definitions of consent for sexual assault and sexual intercourse without consent were different" at the time of the offense. *Zerbst*, ¶ 25.

¶45 In *Resh*, the State charged Resh with SIWOC or, alternatively, sexual assault. *Resh*, ¶ 7. Under the applicable 2013 statutes, the State could establish the element of "without consent" for both offenses based on the victim's age; however, the age of consent for each crime was different. *Resh*, ¶ 11; § 45-5-502(5)(a)(ii), MCA, (2013) (as to sexual assault, a victim is incapable of consent if the victim is less than fourteen years old and the offender is three or more years older than the victim); § 45-5-501(1)(a)(ii)(D), MCA, (2013) (as to SIWOC, a victim is incapable of consent if the victim is less than sixteen years old). At trial, and without objection from Resh, the jury was instructed only on the age of consent for SIWOC (sixteen), and during closing, the State argued it was undisputed the victim was under the age of consent and argued the elements of the two offenses were essentially the same. *Resh*, ¶¶ 8-9. On appeal, we concluded Resh's counsel was ineffective for failing to object to the instruction. *Resh*, ¶ 20. We concluded this failure prejudiced Resh because, had Resh's counsel objected and asked for a separate sexual assault "without consent" instruction, "the result may have been different." *Resh*, ¶ 20.

26

¶46 Unlike *Zerbst* and *Resh*, here the defense was not lack of consent but, rather, that LaFournaise did not commit the offense because he lived far away, had no transportation, and could not have been physically present at the scene. Nor does this case present a scenario as in *Zerbst* and *Resh* where the jury may convict the defendant based on a categorical list of persons incapable of consent rather than resolve conflicting versions of events. No conflicting version of events concerning the element of consent exists here. The instruction had no impact on LaFournaise's defense strategy and did not lessen or relieve the State of its burden of proof. Considering the evidence produced at trial and LaFournaise's arguments, we conclude none of LaFournaise's fundamental rights were implicated by Jury Instruction No. 22.

¶47 LaFournaise urges this Court to infer jury confusion from the jury's note that it was still considering Counts I and II and speculates the jury's brief impasse may have concerned the 2017 definition of consent, thus implicating his due process rights. The record provides no evidence of the reason for the jury's brief impasse. "It is improper for a court to speculate on the jury's thought process when it is not explained by the verdict form." *Pac. Hide & Fur Depot v. Emineth Custom Homes, Inc.*, 2016 MT 114, ¶ 20, 383 Mont. 373, 373 P.3d 829. We decline to speculate as to the reason for the jury's brief impasse.

¶48 Reviewing the record, LaFournaise has not demonstrated any fundamental right implicated by Instruction No. 22. As no fundamental right is implicated, further analysis is unnecessary. The District Court did not abuse its discretion and we decline to reverse for plain error.

27

¶49    The District Court did not abuse its discretion when it allowed the State to file its Third Amended Information mid-trial.  We decline to reverse for plain error based on the District Court's instruction on consent.  LaFournaise's conviction is affirmed.

/S/ LAURIE McKINNON

We concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ JIM RICE

Justice James Jeremiah Shea, dissenting.

¶50    The State could not make a substantive amendment to the Information in the middle of trial because § 46-11-205, MCA, "unequivocally prohibits a court from accepting a substantive amendment within five days of the trial." *Kennedy*, ¶ 11.  The only possible way the State's amendment is permissible then is if it was merely an amendment as to form.  In order to be considered an amendment as to form, all of the following criteria must be satisfied: (1) the same crime is charged; (2) the elements of the crime and the proof required remain the same; and (3) the defendant is informed of the charges against him. *Kennedy*, ¶ 11.  If any one of these criteria are not satisfied, the amendment is substantive. The amendment in this case fails as to all three.

**(1) the same crime is charged:**

¶51    The Information on which the State proceeded to trial charged LaFournaise with aggravated SIWOC, in violation of § 45-5-508(1), MCA.  But as the District Court

28

correctly observed, and is undisputed, LaFournaise was charged with violating a statute that did not exist at the time LaFournaise was accused of violating it. The District Court also correctly observed that SIWOC could not be a lesser included offense of aggravated SIWOC under these circumstances because aggravated SIWOC was an invalid charge. Opinion, ¶ 10. If the amendment was alleging the "same crime" as the original charge, as required to be considered an amendment as to form, it naturally follows that the new charge would likewise be invalid. The entire reason it was necessary for the State to amend the Information is because it brought an invalid charge and it could not seek a lesser included instruction. The amendment therefore necessarily had to be alleging a new or different crime.

**(2) the elements of the crime and the proof required remain the same:**

¶52 When trial commenced, LaFournaise was charged with violating § 45-5-508(1), MCA, which provides that "[a] person who uses force while knowingly having sexual intercourse with another person without consent or with another person who is incapable of consent commits the offense of aggravated sexual intercourse without consent." To secure a conviction on this charge, the State was required to prove, beyond a reasonable doubt, each of the following four essential elements:

     (1) that LaFournaise used force;
     (2) while knowingly;
     (3) having sexual intercourse;
     (4) without S.S.'s consent.

It is "the State's duty in a criminal prosecution to prove beyond a reasonable doubt *every element* of the crime charged." *Clark*, ¶ 29 (emphasis added) (citing Mont. Const.

29

art. II, § 17). The result of the State's mid-trial amendment from aggravated SIWOC to SIWOC was that the State was no longer required to prove beyond a reasonable doubt the first element of aggravated SIWOC—that LaFournaise used force while committing the crime of SIWOC. In other words, the amendment relieved the State of the burden of proving an essential element of the crime with which it proceeded to trial.

¶53 The majority holds in this case that the mid-trial amendment was one of form because "the nature of the offense and the essential elements remained the same." Opinion, ¶ 28. The majority then lists the three elements the State was required to prove in order to convict LaFournaise of SIWOC and observes that aggravated SIWOC required the State to prove "the same elements of SIWOC along with the aggravating circumstance of the defendant using force." Opinion, ¶ 28. But the use of force in the commission of the crime was not just some ancillary language of no consequence, as the majority seems to imply; it was an essential element of the crime that the State was required to prove beyond a reasonable doubt in order to convict LaFournaise of aggravated SIWOC. The amendment relieved the State of this requirement. The majority's conclusion that "the elements the State was required to prove remained the same" holds true only if we are to hold that the use of force is not an element of the crime of aggravated SIWOC. Opinion, ¶ 28.

¶54 The majority deems it significant that "[t]he Third Amended Information added no additional element and removing the use of force failed to lessen the State's burden of proof concerning the remaining elements." Opinion, ¶ 28. But the test is not whether an amendment adds or subtracts an element—it is whether, after an amendment, the elements

30

"remain the same." *Kennedy*, ¶ 11. As to the majority's conclusion that "removing the use of force failed to lessen the State's burden of proof concerning the remaining elements," the majority fails to recognize that the issue is not whether eliminating the use of force element lessened the State's burden "concerning the remaining elements"—removing the use of force element relieved the State of the burden of proving an entire element that would have otherwise been necessary to secure a conviction.[1]

**(3) the defendant is informed of the charges against him:**

¶55 "An information must reasonably apprise the defendant of the charges against him so that he may have the opportunity to prepare and present his defense." *Spotted Eagle*, ¶ 9. In this case, LaFournaise was apprised that the charge against him was aggravated SIWOC, which required the State to prove that he used force while committing SIWOC. As the majority observes, the record indicates that defense counsel was aware of the invalidity of Count I as to aggravated SIWOC and intended to move for a directed verdict. Opinion, ¶ 35. But the State's charging error meant not only that LaFournaise would have been entitled to a directed verdict at the close of the State's case-in-chief; it also foreclosed the option of seeking a lesser included instruction, which would have allowed the jury to consider convicting LaFournaise of SIWOC. LaFournaise's counsel was aware that the State could not prevail on Count I, and prepared for trial accordingly. While the majority

---

[1] The majority contends that because "the use of force was included in the [2015] statutory definition of 'without consent'" it was "inherent to the State's burden of proof." Opinion, ¶ 31. But force was not inherent in the State's burden of proof in this case because the jury was erroneously instructed to apply the 2017 definition of consent, which allowed for consent to be overcome by deception, coercion, or surprise. *See* § 45-5-501(1)(b)(iii), MCA (2017).

31

is correct that a defendant has no constitutional right that guarantees a successful directed verdict, the defendant likewise has no obligation to alert the State when he is aware that the State cannot succeed on a charge against him for whatever reason, and the defendant certainly is entitled to prepare his defense on that basis without being penalized for the State's error by having the legal landscape shift mid-trial.

¶56    The invalidity of the original charge aside, when LaFournaise's counsel objected to the amendment, she noted that "[LaFournaise is] charged with aggravated sexual intercourse without consent, and that is how we have structured our defense." This would seem self-evident; since the State is required to prove all elements of a crime beyond a reasonable doubt, it is entirely plausible—and quite common—that a defendant may focus his defense on the State's failure to prove a single element in order to secure an acquittal. If the State is allowed to jettison that element mid-trial, it necessarily would impact the manner in which the defense proceeds. On appeal, LaFournaise again asserts that his trial counsel had to "pivot" after the State was allowed to amend. The majority dismisses LaFournaise's contentions by stating that his "defense was not based on the 'use of force' element present in aggravated SIWOC." Opinion, ¶ 34. The majority fails to recognize, though, that LaFournaise's pivot in strategy was triggered by the State's amendment that eliminated the use of force element, and which occurred during the State's case-in-chief. At that juncture, it would have made no sense for LaFournaise to pursue a defense based on challenging an element of the crime that the State was no longer required to prove. Indeed, LaFournaise likely would have been prohibited from pursuing such a defense, which illustrates the substantive nature of the amendment.

32

¶57 Particularly problematic in this case is that when the State amended the Information to charge LaFournaise with aggravated SIWOC, it did not *add* the charge of aggravated SIWOC to the charges in the Information while retaining SIWOC as a separate count. If that had been the case, then when the District Court discovered the State's charging error the solution would have simply been to dismiss the aggravated SIWOC and proceed on the remaining charges, including the SIWOC count. But the State chose instead to amend the Information to charge aggravated SIWOC *in lieu of* SIWOC, so when the District Court discovered the State's error, it was put in an untenable position. The District Court reasonably sought a solution that would ensure "each party has a fair trial." While I commend the District Court's efforts in this regard, the solution did not ensure a fair trial to LaFournaise. I would reverse the District Court's order allowing the State to substantively amend the Information mid-trial. I dissent.

/S/ JAMES JEREMIAH SHEA

Justice Ingrid Gustafson and Justice Dirk Sandefur join in the Dissent of Justice Shea.

/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR