FILED

October 6 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0566

DA 14-0566

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 289

CITY OF MISSOULA,

      Plaintiff and Appellee,

  v.

JUSTIN SHARP,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DC-14-302
Honorable Ed McLean, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Wade Zolynski, Chief Appellate Defender, Haley Connell, Assistant
Appellate Defender, Helena, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General, Mardell Ployhar, Assistant
Attorney General, Helena, Montana

          Jim Nugent, Missoula City Attorney, Angie Robertson Bakken, Deputy
City Attorney, Missoula, Montana

Submitted on Briefs:  September 2, 2015
Decided:  October 6, 2015

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 Justin Sharp appeals from the order of the Montana Fourth Judicial District Court, Missoula County, affirming the Missoula Municipal Court judgment denying his motion to suppress evidence for lack of particularized suspicion. We affirm.

¶2 We address the following issue:

Did Officer Lloyd have sufficient objective data to form a particularized suspicion of wrongdoing in order to justify the investigatory stop of Sharp?

## PROCEDURAL AND FACTUAL BACKGROUND

¶3 On November 27, 2013, Officer Lloyd ("Lloyd") of the Missoula Police Department was on patrol in downtown Missoula. Around 10:00 p.m., Lloyd was parked on the southbound lane of Higgins Street with a view of the Front and Higgins Street intersection. While parked, Lloyd noticed pedestrians walking in and around the intersection. He then observed several vehicles stop at the northbound light on Front Street. One of those vehicles at the light was an older model pickup truck operated by Justin Sharp ("Sharp"). The speed limit for that section of Higgins Street is 25 miles per hour. When the light at the intersection turned green, Lloyd heard Sharp rev the engine of his pickup truck. Lloyd then saw Sharp launch the truck into a rapid acceleration across the block, leaving behind the other cars at the intersection. As Sharp passed the patrol car, which was parked near the middle of the block, the other cars had just crossed Front Street. After Sharp passed the parked patrol car, Lloyd had time to start the police car, switch his lights on, and turn into the same traffic with which Sharp had stopped at

2

the light. Lloyd considered the rapid acceleration and excessive speed of the truck to be "aggressive" driving, especially in an area frequented by pedestrians walking to and from restaurants and bars in the dark. Lloyd followed Sharp with his light bar activated and Sharp stopped after a few blocks. After the stop Lloyd noticed Sharp slurring his speech and the stop ripened into a DUI investigation.

¶4 As a result of the stop, Sharp was charged with Driving Under the Influence of Alcohol or Drugs, in violation of § 61-8-212, MCA, Driving Without Liability Insurance, in violation of § 61-6-301, MCA, Habitual Traffic Offender Operating Motor Vehicle, in violation of § 61-11-213, MCA, and Refusal To Submit To Breath or Blood Alcohol And/Or Drug Test, in violation of Missoula ordinance 10.56.020. Sharp filed a motion to suppress the evidence that resulted from the stop for lack of particularized suspicion. The Missoula Municipal Court denied the motion. Sharp entered into a plea agreement and reserved his right to appeal the denial. On August 6, 2014, after a review of the record, the District Court affirmed the Municipal Court order, and a timely appeal to this Court followed.

**STANDARD OF REVIEW**

¶5 We review a district court's factual findings of particularized suspicion for clear error and its application of those facts to the law for correctness. *State v. Larson*, 2010 MT 236, ¶ 15, 358 Mont. 156, 243 P.3d 1130.

**DISCUSSION**

¶6 *Did Officer Lloyd have sufficient objective data to form a particularized suspicion of wrongdoing in order to justify the investigatory stop of Sharp?*

¶7 Sharp contends on appeal that the District Court erred in concluding Lloyd possessed sufficient objective data to constitute particularized suspicion to justify the stop. Under Montana law, a peace officer is justified to stop a vehicle "that is observed in circumstances that create a particularized suspicion that the . . . occupant of the vehicle has committed, is committing, or is about to commit an offense." Section 46-5-401(1), MCA. In order to satisfy the requirement of particularized suspicion, the State must show that the officer had "(1) objective data and articulable facts from which an experienced officer can make certain inferences, and (2) a resulting suspicion that the occupant of [the] vehicle is or has been engaged in wrongdoing." *Larson*, ¶ 19 (citing *Brown v. State*, 2009 MT 64, ¶ 20, 349 Mont. 408, 203 P.3d 842).

¶8 The law in Montana has never required that a peace officer be certain that an offense has been committed in order to justify an investigatory stop. This Court adopted the particularized suspicion standard in 1981 in *State v. Gopher* in the aftermath of the United States Supreme Court case *United States v. Cortez*, 449 U.S. 411, 101 S. Ct. 690 (1981). *State v. Gopher*, 193 Mont. 189, 192, 631 P.2d 293, 295 (1981). The Court cited the *Cortez* decision for the rationale behind the adoption of the requirement of particularized suspicion.

> The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common sense conclusions about human behavior; jurors as factfinders are permitted to do the same—and so are law

4

enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.

*Gopher*, 193 Mont. at 192, 631 P.2d at 295 (quoting *Cortez*, 449 U.S. at 418, 101 S. Ct. at 695). The quoted language from *Cortez* also established that particularized suspicion does not require certainty, but rather an analysis of the facts and circumstances as they appear to the trained police officer who observes them. A year after *Gopher*, the Court revisited the issue of particularized suspicion in *State v. Morsette*, 201 Mont 233, 654 P.2d 503 (1982). The Court reaffirmed in *Morsette* that certainty is not "essential" and that the police officer need only have an objective and particularized "basis for suspecting the . . . person of criminal activity." *Morsette*, 201 Mont. at 240, 654 P.2d at 506 (quoting *Cortez*, 449 U.S. at 418, 101 S. Ct. at 695). The particularized suspicion standard was eventually codified by the Legislature in 1991. Section 46-5-401, MCA. Since then, there has been a string of cases upholding the law of particularized suspicion as first articulated in *Gopher*, affirmed in *Morsette*, and codified by the Legislature in 1991. *See State v. Martinez*, 2003 MT 65, ¶ 22, 314 Mont. 434, 67 P.3d 207; *State v. Brander*, 2004 MT 150, ¶ 6, 321 Mont. 484, 92 P.3d 1173;[1] *Weer v. State*, 2010 MT 232, ¶ 10, 358 Mont. 130, 244 P.3d 311.

¶9      Here, although he did not have radar confirmation, Lloyd testified that in his opinion Sharp was speeding. Particularized suspicion does not require certainty; it

---

[1] The Court in *Brander* pointed out that "the question is not whether any one of [the petitioner's] driving aberrations was itself 'illegal' but rather, whether [the officer] could point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." *Brander*, ¶ 6.

5

depends on the totality of the circumstances in which the officer is making the determination. *Larson*, ¶ 19. As demonstrated above, this Court has in the past held that a peace officer need not witness a specific offense in order to have particularized suspicion. *State v. Cameron*, 2011 MT 276, ¶ 15, 362 Mont. 411, 264 P.3d 1136. Of course, an officer observing a vehicle speeding has particularized suspicion to perform an investigatory stop related to the speeding. *See* §§ 46-5-401 and 61-8-303, MCA; *State v. Hurlbert*, 2009 MT 221, ¶ 21, 351 Mont. 321, 211 P.3d 874. Then, "if additional objective data of wrongdoing exists, the additional information may give rise to further suspicions and enlarge the scope of the investigation." *Hurlbert*, ¶ 21 (internal citations omitted).

¶10 Lloyd's observations of Sharp's driving behavior were sufficient to constitute particularized suspicion. Lloyd's suspicion was based on a combination of observable facts and an awareness of the circumstances in which Sharp was operating the truck. When Lloyd saw Sharp drive up to the Front and Higgins Street intersection at 10:00 p.m., it was dark. That intersection is located in downtown Missoula and is frequented by restaurant patrons, pedestrians, and bicyclists. The posted speed limit for that part of Higgins is 25 miles per hour. Lloyd, an experienced officer, had a direct view of the northbound lane of Higgins and he could see several other cars stopping at the light with Sharp. At the moment the light turned green, Sharp rapidly accelerated the truck, revving the engine through the intersection. By the time Sharp passed the patrol car, Lloyd had time to start the police car, switch on his light bar, and swing into the same traffic that had stopped with Sharp. These events constitute objective data on which Lloyd visually

6

estimated, based on years of monitoring vehicles on Montana's roadways, that Sharp likely exceeded the posted speed limit. As a result of those events, Lloyd was left with an impression that Sharp's handling of the car was unsafe under those circumstances. Lloyd considered these facts and the totality of the circumstances before deciding to stop Sharp.

¶11 In *Larson* we found that particularized suspicion was present under similar facts. The defendant in *Larson* drove across an intersection at night in Missoula in clear view of two patrol cars with activated light bars. The defendant revved the engine continuously through the intersection and caught the notice of the police officers. *Larson*, ¶¶ 7-8. Additionally, the police officer who ultimately conducted the stop of the defendant also noticed a potentially citable violation on the truck, but did not confirm the violation. Nor did the district court in that case find that the violation had actually occurred. *Larson*, ¶ 22. However, as we mentioned in *Larson*, "[t]he potential violation was merely one observation [the police officer] relied upon in determining that a particularized suspicion existed to conduct a traffic stop." *Larson*, ¶ 22. Similarly, in this case, Lloyd did not confirm that Sharp was actually going above the posted 25 miles per hour speed limit, but Sharp's acceleration and speed in the intersection were observable facts in a series of events that would warrant further investigation.

¶12 Based on the above we are unable to conclude that the District Court's factual findings regarding the existence of particularized suspicion were clearly erroneous. In view of all the circumstances, including Sharp's speed, his rapid acceleration, the fact

7

that there were pedestrians near the intersection, and the nighttime visibility, we agree that there were sufficient objective facts to create particularized suspicion for the stop.

¶13 The judgment of the District court is affirmed.


/S/ MIKE McGRATH


We Concur:

/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ PATRICIA COTTER
/S/ LAURIE McKINNON
/S/ JIM RICE