Justice Beth Baker delivered the Opinion of the Court.
***366 ¶ 1 Mark French appeals his conviction for speeding in violation of § 61-8-303(1)(b), MCA, following a trial de novo in the Twentieth Judicial District Court, Sanders County. We restate the dispositive issues as follows:
1. Did the District Court err when it did not dismiss the case for lack of particularized suspicion and for lack of corroborating evidence?
2. Does the State's comment to the jury that French already had been convicted of the charge in the Justice Court require reversal?
3. Did the District Court abuse its discretion when it did not allow French to argue *334 that two or more witnesses must testify against a defendant in a criminal prosecution?
¶ 2 We affirm on issues one and three and reverse and remand to the ***367 District Court on issue two for a new trial.
PROCEDURAL AND FACTUAL BACKGROUND
¶ 3 On March 8, 2016, Montana Highway Patrol Trooper Zachary Rehbein cited French for exceeding the maximum speed limit by travelling eighty miles per hour in a sixty-five-miles-per-hour, night-limit zone, in violation of § 61-8-303(1)(b), MCA. Representing himself, French challenged the citation in Sanders County Justice Court. The jury found him guilty, and he appealed to the Twentieth Judicial District Court, Sanders County. French also appeared on his own behalf in the District Court.
¶ 4 Prior to trial, French filed a "Motion to Dismiss Due to Lack of Particularized Suspicion," arguing in part that: (1) he was not speeding, and Trooper Rehbein may not be credible; (2) there was no particularized suspicion for the stop because it was based solely on Trooper Rehbein's uncorroborated account of what happened; and (3) the state and federal constitutions require two witnesses to testify for a conviction. French filed multiple briefs in support of his theories of law, arguing in part that the Bible, the Montana Constitution, and the United States Constitution require more than one witness to testify against a defendant.[1] The District Court denied the motion to dismiss, reasoning that: (1) as the trier of fact, the jury would weigh the credibility of Trooper Rehbein's testimony and decide whether French was speeding; (2) the evidence supported particularized suspicion for the stop; and (3) neither the Montana Constitution nor the United States Constitution required the testimony of multiple witnesses to convict a person.
¶ 5 The District Court subsequently granted the State's motion in limine to preclude French from calling any witnesses or attempting to elicit testimony regarding his theories of what the law is or mention his theories of law in front of the jury panel. The District Court denied French's request for reconsideration based on the historical references in the Bible and Roman law of the requirement of two or more witnesses for criminal prosecution, and held that French could not to argue this theory to the jury.
¶ 6 Trooper Rehbein was the only witness at French's trial. He was patrolling in Sanders County on March 8, 2006, at approximately ten o'clock p.m., when he observed a vehicle that appeared to be speeding. Trooper Rehbein activated his radar and "checked their speed at 80 ***368 miles an hour." The speed limit was sixty-five miles per hour. He stopped the vehicle and asked the driver for his license, proof of insurance, and registration. The driver, French, provided his vehicle registration to Trooper Rehbein, but he did not have a driver's license or proof of insurance in his possession. Trooper Rehbein issued French a citation for speeding. Trooper Rehbein testified that the radar was functioning properly and that the Highway Patrol does not have the capability to connect the radar to his dash-camera system. He further testified that, customary with his practice, after completing the stop he ran his radar through a self-test to ensure it was working properly and created a "speed device log." The radar machine Trooper Rehbein used could not produce any type of printout of the clocked speed.
¶ 7 The jury found French guilty of speeding in violation of § 61-8-303(1)(b), MCA.
STANDARDS OF REVIEW
¶ 8 We may review claimed errors not objected to at trial that implicate an accused's fundamental rights, where failing to review the claimed error may result in a manifest miscarriage of justice, may leave unsettled the question of the fundamental fairness of the trial proceedings, or may compromise the integrity of the judicial process. State v. Clemans , 2018 MT 187, ¶ 20, 392 Mont. 214, 422 P.3d 1210. We exercise plain error review on a case-by-case basis. Clemans , ¶ 20.
*335 ¶ 9 We review de novo a ruling on a motion to dismiss in a criminal proceeding. State v. Burns , 2011 MT 167, ¶ 17, 361 Mont. 191, 256 P.3d 944. We review a trial court's factual findings of particularized suspicion for clear error and its application of those facts to the law for correctness. City of Missoula v. Sharp , 2015 MT 289, ¶ 5, 381 Mont. 225, 358 P.3d 204.
¶ 10 We review the other challenged rulings for an abuse of discretion: whether the district court fully and fairly instructed the jury, Ammondson v. Nw. Corp. , 2009 MT 331, ¶ 30, 353 Mont. 28, 220 P.3d 1, and the admissibility of evidence, State v. Passmore , 2010 MT 34, ¶ 51, 355 Mont. 187, 225 P.3d 1229. A court abuses its discretion if it acts arbitrarily without the employment of conscientious judgment or exceeds the bounds of reason, resulting in substantial injustice. Passmore , ¶ 51.
DISCUSSION
¶ 11 1. Did the District Court err when it did not dismiss the case for lack of particularized suspicion and for lack of corroborating evidence?
¶ 12 French first argues that the District Court erred when it denied ***369 his pretrial motion to dismiss for lack of particularized suspicion. French maintains that in addition to witness testimony, particularized suspicion must be supported by independent corroborating evidence.
¶ 13 A police officer may stop a vehicle that "is observed in circumstances that create a particularized suspicion that the person or occupant of the vehicle has committed, is committing, or is about to commit an offense." Section 46-5-401(1), MCA. To satisfy the requirement of particularized suspicion, the State must show that the officer had "(1) objective data and articulable facts from which an experienced officer can make certain inferences, and (2) a resulting suspicion that the occupant of [the] vehicle is or has been engaged in wrongdoing." Sharp , ¶ 7 (internal citation omitted). Objective data means facts that are observable and articulable and an awareness of the circumstances of an individual's conduct. See Sharp , ¶ 10. If an officer observes a vehicle speeding, he has particularized suspicion to perform an investigatory stop. Sharp , ¶ 9.
¶ 14 Trooper Rehbein articulated that he stopped French based on his visual observation and on the radar confirmation. Contrary to French's contention that there is no "objective criteria" because Trooper Rehbein's testimony is uncorroborated, Trooper Rehbein articulated objective facts-his experienced observation of a speeding vehicle and radar confirmation of the vehicle's speed. A review of the full record supports the court's finding of particularized suspicion. See Sharp , ¶ 9. The District Court thus correctly denied French's motion to dismiss for lack of particularized suspicion.
¶ 15 Although he made no motion at trial, French argues further that the District Court should have dismissed the case sua sponte after Trooper Rehbein testified because his testimony was uncorroborated. French maintains that for a conviction, Trooper Rehbein's testimony must be corroborated by "objective data," such as a print-out from the radar or video of the speed shown on the radar.
¶ 16 The testimony of a single witness the jury finds credible "is sufficient for proof of any fact, except perjury and treason." Section 26-1-301, MCA ; State v. Bowen , 2015 MT 246, ¶ 30, 380 Mont. 433, 356 P.3d 449. A witness is presumed to speak the truth, and the jury is the "exclusive judge" of a witness's credibility. Section 26-1-302, MCA. The jury "has a prerogative to accept or reject testimony" and to determine what evidence to believe. State v. Sanchez , 2017 MT 192, ¶¶ 18-19, 388 Mont. 262, 399 P.3d 886 (quoting State v. Benson , 1999 MT 324, ¶ 14, 297 Mont. 321, 992 P.2d 831 ).
¶ 17 French has cited no legal authority, and we have found none, that requires an instruction to the jury that "before they can convict, they ***370 need corroborating evidence that [French] was indeed speeding." To find French guilty of violating § 61-8-303(1)(b), MCA, the jury needed to find that French was traveling eighty miles per hour in a sixty-five miles-per-hour, night-limit zone. The District Court properly submitted the *336 case to the jury based on Trooper Rehbein's testimony, and it did not err by failing to dismiss sua sponte for lack of corroborating evidence.
¶ 18 2. Does the State's comment to the jury that French already had been convicted of the charge in the Justice Court require reversal?
¶ 19 French told the jury in his closing argument that "the State thinks this issue is important. We've had two trials. This is the second trial over this issue." He stated, "If there's a mistrial, it goes back into the hands of the State, and then the State will decide whether to have a third trial. Or just drop it." The prosecutor argued in rebuttal, "Oh, the State will try me three times. Yeah, we tried him once, we convicted him, and he appealed up here. That's why we're up here for a second [trial]." French did not object.
¶ 20 French argues that the State's comment that he previously had been convicted of speeding was "inappropriate" and "prejudicial" and would likely "inflame the jury against the defendant." The State concedes that the prosecutor's comment at closing argument "amounts to testimony on prejudicial facts not before the jury's consideration." The State agrees that plain error review is appropriate for this issue and that French is entitled to a new trial.
¶ 21 A prosecutor may not comment about the guilt of an accused because, among other reasons, "a prosecutor's expression of guilt invades the province of the jury and is an usurpation of its function to declare the guilt or innocence of the accused." State v. Stringer , 271 Mont. 367, 381, 897 P.2d 1063, 1071 (1995). Prosecutorial misconduct "may be grounds for reversing a conviction and granting a new trial if the conduct deprives the defendant of a fair and impartial trial." State v. Hayden , 2008 MT 274, ¶ 27, 345 Mont. 252, 190 P.3d 1091.
¶ 22 In this case, the prosecutor's remark to the jury that French had been tried and was found guilty in the Justice Court of the very charge it was about to deliberate presented prejudicial facts not before the jury's consideration. The State concedes that the comment implicated the fundamental fairness of the proceedings. We reverse and remand to the District Court for a new trial. Of French's remaining arguments, we address only those likely to arise on retrial.
¶ 23 3. Did the District Court abuse its discretion when it did not allow French to present the jury with a legal theory that two or more witnesses must testify against a defendant in a criminal prosecution?
***371 ¶ 24 French asserts that the District Court abused its discretion three times when it did not allow him to present the legal theory that two or more witnesses are required to uphold his conviction: (1) by excluding a proposed exhibit; (2) by denying a proposed jury instruction, and (3) by prohibiting him from citing the Bible in his closing argument. We will address each issue in turn.
Proposed Exhibit
¶ 25 On cross-examination, French asked Trooper Rehbein if there was an oath that he swore to fulfill as a Highway Patrol Trooper. Trooper Rehbein testified that the Montana Code Annotated "are the laws [he is] accountable to uphold." French further asked if he "swore an oath of office to uphold Montana Code Annotated," and Trooper Rehbein answered, "Yes, sir." French then offered into evidence a copy of § 2-16-211, MCA, as the oath sworn by all public officers. The District Court denied admitting a copy of the statute into evidence because it did not find it relevant.
¶ 26 French argues that the District Court abused its discretion by excluding his proposed exhibit. French argues that the statute would have put Trooper Rehbein's credibility into question because he stated that his oath was to uphold the Montana Code Annotated, and the statute is an oath to defend the federal and Montana constitutions. French did not, however, explain his purpose for the exhibit at trial.
¶ 27 The trial court has broad discretion in determining the relevance and admissibility of evidence. State v. Hicks , 2013 MT 50, ¶ 14, 369 Mont. 165, 296 P.3d 1149.
*337 Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable," including "evidence bearing upon the credibility of a witness." M. R. Evid. 401.
¶ 28 The District Court has broad discretion in determining the relevancy and admissibility of evidence. Upon a full review of the record and in the context of its other rulings, we conclude that the District Court did not abuse its discretion by excluding the statute from evidence.
Jury Instruction
¶ 29 French proposed the text of the Sixth Amendment as a jury instruction, which states:
In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which ***372 district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.
¶ 30 The State conceded that the proposed instruction was a fair statement of law but objected because it was confusing. Noting that the proposed instruction was a statement of the Constitution, the District Court acknowledged that French wished to have something in the instructions about "witnesses in the plural." It denied the instruction, however, because it already had ruled as a matter of law that one witness is sufficient to prove any fact.
¶ 31 French maintains that the District Court abused its discretion in refusing his proposed jury instruction. French argues that the Sixth Amendment Confrontation Clause is applicable to this case because it contains the word "witnesses." He contends that this supports his argument that more than one witness is required to convict. He argues that the Montana Constitution also supports his position.
¶ 32 A district court's broad discretion to formulate jury instructions is limited by the overriding principle that jury instructions must fully and fairly instruct the jury regarding the applicable law. Peterson v. St. Paul Fire & Marine Ins. Co. , 2010 MT 187, ¶ 22, 357 Mont. 293, 239 P.3d 904. The purpose of a jury instruction is to "assure a decision consistent with the evidence and the law," which is accomplished with plain, clear, concise, and brief instructions. Peterson , ¶ 33 (internal quotations and citation omitted).
¶ 33 The requirement of two witnesses is not the law in Montana or, to our knowledge, in any other state. See Lang v. Lee , 24 Va. 410, 420 (Va. 1825) (finding that a single witness is sufficient and goes to the "very root of the law; which is uniform in principle and practice"). What's more, the modern American law system is based on the English common law system, which "rejected entirely" the requirement of more than one witness by the middle of the 1600s. John H. Wigmore, Required Numbers of Witnesses; a Brief History of the Numerical System in England , 15 Harv. L. Rev. 83, 93 (1901) (citing 1662, Tong's Trial, 6 How. St. Tr. 226, Kelyng (stating that "at common law, one witness is sufficient to a jury") ).
¶ 34 The record is clear that the District Court fully and fairly instructed the jury that "[t]he evidence presented by one witness whom you believe is sufficient for the proof of any fact in this case." See § 26-1-301, MCA ; Bowen , ¶ 30. The District Court did not abuse its discretion when it denied French's proposed jury instruction.
***373 Closing Argument
¶ 35 In closing argument, French argued:
The only possible evidence of my guilt is the testimony of one potentially biased man. The Bible teaches us: By the mouth of two or three witnesses, a matter-
[PROSECUTION]: Objection, Your Honor.
FRENCH: -shall be established.
THE COURT: Hold on. I'm not going to let you argue the Bible.
*338 ¶ 36 French argues that he should have been allowed to quote the Bible in his closing argument because it provides historical context for his contention that the law requires more than one witness for a criminal conviction.[2] He maintains that, "[a]s long as an open Bible is not suggested to be used for jury deliberations," then his argument should have been allowed.
¶ 37 We held recently that it is inappropriate for a prosecutor to reference God in her closing statements to support her claim that a defendant is guilty. See State v. Lacey , 2012 MT 52, ¶¶ 19, 24, 364 Mont. 291, 272 P.3d 1288 (the prosecutor's statement to the jury to "go back there and find [the defendant] guilty, because, by God, he is" is an inappropriate reference to God in closing arguments). In turn, it is inappropriate for a defendant to rely on the Bible in his closing arguments to support his claim that he is not guilty. "To invoke a higher power, under these circumstances, serves no purpose other than to seek an emotional ... response from the jury" and divert the jury's attention from the court's instruction on the law. Lacey , ¶ 25 (citing Sandoval v. Calderon , 241 F.3d 765, 776 (9th Cir.2000) ); see also Carruthers v. State , 272 Ga. 306, 528 S.E.2d 217, 222 (2000) (holding that it is inappropriate for a prosecutor to cite Bible passages in the sentencing phase of a capital case because "[l]anguage of command and obligation from a source other than [state] law should not be presented to the jury"), overruled in part on other grounds by Vergara v. State , 283 Ga. 175, 657 S.E.2d 863 (2008).
¶ 38 French's reference to the Bible was an attempt to argue his theory that a crime cannot be established unless there are two or more ***374 witnesses-a theory the District Court rightly rejected. The closing arguments should have focused on the facts, inferences that could reasonably be drawn from the facts, and application of the law instructed by the court to those facts and reasonable inferences. Lacey , ¶ 25. The District Court did not abuse its discretion when it ruled that French could not argue language from the Bible in front of the jury because that is not the applicable law in this case.
CONCLUSION
¶ 39 The District Court correctly denied French's Motion to Dismiss for Lack of Particularized Suspicion because independent corroborating evidence is not required to establish a fact. The District Court did not abuse its discretion when it did not allow French to argue his theory of law to the jury that multiple witnesses are required for a conviction. Because the prosecutor stated prejudicial facts not before the jury's consideration, we reverse and remand to the District Court for a new trial.
We Concur:
MIKE McGRATH, C.J.
JAMES JEREMIAH SHEA, J.
INGRID GUSTAFSON, J.
JIM RICE, J.

French raised additional theories of law that are not at issue on appeal.

French maintains that it is inconsistent to restrict defendants from referencing the Bible when references to the Bible in judicial decisions are allowed. As an example, he notes that the dissent in Steer, Inc. v. Dep't of Revenue , 245 Mont. 470, 803 P.2d 601 (1990) (Weber, J., dissenting), cited the Bible. That case, however, involved a comparison of an entity's religious activities with its charitable activities; thus, religion was at issue. Steer, Inc. , 245 Mont. at 481-83, 803 P.2d at 607-09. Neither religion nor the Bible is at issue in a speeding ticket.