FILED

07/12/2022

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0367

DA 20-0367

IN THE SUPREME COURT OF THE STATE OF MONTANA

2022 MT 141N

CITY OF MISSOULA,

Plaintiff and Appellee,

v.

BRIANNE NICOLE RANA,

Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DC 19-653
Honorable Shane Vannatta, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Samir F. Aarab, Boland Aarab PLLP, Great Falls, Montana

For Appellee:

Austin Knudsen, Montana Attorney General, Michael P. Dougherty,
Assistant Attorney General, Helena, Montana

James P. Nugent, Missoula City Attorney, Keithi M. Worthington, Chief
Prosecuting Attorney, Missoula, Montana

Submitted on Briefs:  June 8, 2022

Decided:  July 12, 2022

Filed:

_____
Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Defendant and Appellant Brianne Nicole Rana (Rana) appeals from the August 1, 2019 Findings of Fact, Conclusions of Law, and Order issued by the Missoula Municipal Court, which denied Rana's motion to dismiss, and the May 26, 2020 Opinion and Order issued by the Fourth Judicial District Court, Missoula County, which affirmed the Municipal Court on appeal. We affirm.

¶3 On March 20, 2019, shortly after 2:00 a.m., Missoula Police Officer Josh Harris observed a pickup truck make an illegal left turn from Main Street onto Orange Street in Missoula. Officer Harris pulled the vehicle over and made contact with the driver, Rana. Upon approaching the vehicle, Officer Harris informed Rana he stopped her for making an illegal turn before asking Rana for her driver's license, registration, and proof of insurance. Rana handed Officer Harris her license, registration, and an expired insurance card. While Rana searched on her phone for current proof of insurance, Officer Harris asked her "how much have you had to drink tonight?" Rana stated she had not been drinking, and Officer Harris informed her he could "smell alcohol coming from" her. Rana responded that she had a concussion and her doctor said she could not drink. Officer Harris also questioned

2

Rana about the 21-and-over wristband she was wearing. Officer Harris again noted he could smell alcohol coming from Rana, but she stated she had not been drinking and would not consent to a breath test. Officer Harris got Rana's current address and told her to "hang tight" while he went back to his vehicle, where he called in the information to dispatch. Another officer who had arrived on scene stood by Rana's vehicle.

¶4 After speaking with dispatch, Officer Harris then returned to Rana's vehicle. Officer Harris told Rana he was going to have her "hop out of the vehicle." Rana initially responded, "OK," before asking "was [there] a reason for this," to which Officer Harris replied, "[y]ep." Rana asked what the reason was, to which Officer Harris replied that she needed to "hop out of the vehicle" for him. Rana then asked if she was being arrested. Officer Harris responded, "[n]ot right now, no." Rana again asked for a reason to get out of the vehicle, and Officer Harris told her, "[b]ecause I'm asking you to hop out, OK." Rana said she was not comfortable getting out without a good reason, to which Officer Harris replied "[y]ou have to." Rana stated she did not have to, and Officer Harris again told her, "[y]ou do, actually." Rana told Officer Harris, "[i]f you want to arrest me for something, then . . . " before Officer Harris opened the driver's side door to Rana's vehicle. Rana asked what she was being arrested for, to which Officer Harris responded that he did not say she was being arrested. Officer Harris told Rana he was telling her to get out of the vehicle, and Rana again stated she was not comfortable with that unless she was being arrested for something. Officer Harris responded, "Brianne, if a law enforcement officer asks you to get out of a vehicle, by law you have to. Now I will talk to you once we get

3

out here and get on the sidewalk, OK." Rana asked if someone else could come meet them and said she did not understand what was going on. Officer Harris told Rana he would explain it in a second. Rana then asked Officer Harris if she was "speeding or something." Officer Harris asked Rana if she did not remember why she had been stopped and that he had told her the reason "literally two minutes ago[.]" Rana said she had a concussion and Officer Harris again told her to "hop out of the vehicle." Rana asked if a supervisor could meet them, to which Officer Harris responded, "[n]o."

¶5    Officer Harris continued to tell Rana to get out of the vehicle and that he would explain the situation further once she got out. Rana repeatedly refused to exit the vehicle and said she was confused about why she was pulled over. Officer Harris told Rana again that she made an illegal turn. Eventually, while once again telling Rana to exit the vehicle, Officer Harris stated, "Brianne, you've been drinking tonight and I need to make sure you're safe to drive, OK?" Rana continued to argue with Officer Harris, while Officer Harris continued to tell Rana to get out of the vehicle. Officer Harris then told Rana she was about to be "arrested for ignoring a lawful command." Rana replied, "[t]hat's OK, if you like," to which Officer Harris responded, "[s]o you're wanting to be arrested for simply not listening to what I'm telling you to do? You'd rather go to jail than get out of the vehicle and come talk to me?" Rana again said Officer Harris could arrest her. Officer Harris again told Rana he knew she had been drinking tonight, but that her drinking did not necessarily mean she was unsafe to drive, and he wanted to make sure she was OK to drive. Officer Harris said if Rana was OK to drive after he checked, she would be free to go on

4

her way, but if she refused to get out of the vehicle she was going to go to jail. Officer Harris asked Rana to explain her reasoning, to which she replied that she had not broken any laws. Officer Harris told Rana that she had broken the law, to which Rana replied that if Officer Harris felt the need to arrest her, then "that's acceptable." Officer Harris then physically removed Rana from the vehicle and placed her under arrest. After being taken to the Missoula County Detention Center, Rana refused Officer Harris's request to take standardized field sobriety tests (SFSTs) and refused to provide a breath sample.

¶6    Rana was ultimately charged in the Missoula Municipal Court with driving under the influence, first offense; failure to carry proof or exhibit insurance; making a left turn from an improper lane; and obstructing a peace officer or other public servant. Rana pled not guilty to all charges. Before trial, Rana filed a motion to suppress and dismiss, arguing Officer Harris was attempting to conduct a field sobriety test of Rana by asking her to get out of the vehicle, which she had a constitutional right to refuse. Rana therefore argued the Municipal Court should suppress any information obtained after Officer Harris asked her to step out of the vehicle and dismiss the obstruction, DUI, and insurance charges. The City responded to Rana's motion, asserting Officer Harris lawfully expanded the scope of his initial stop due to his observations which tended to show Rana may be driving under the influence of alcohol; that Officer Harris had lawful authority to order Rana out of the vehicle under the United States Supreme Court's holding in *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S. Ct. 330 (1977) (per curiam) and its progeny; and that Rana's refusal to obey Officer Harris's command to exit constituted obstructing. After holding an

evidentiary hearing, the Municipal Court issued its Findings of Fact, Conclusions of Law, and Order denying Rana's motion on August 1, 2019. The Municipal Court held Officer Harris had particularized suspicion to stop Rana's vehicle; particularized suspicion to expand the scope of the stop into a DUI investigation; and that asking a driver to exit the vehicle constitutes a *de minimis* intrusion on an already-seized driver under *Mimms*, does not qualify as part of the Standardized Field Sobriety Tests, and does not constitute a search. The Municipal Court further held it was "not addressing the issue of if refusing to exit a vehicle constitutes obstructing a peace officer" because it was "an issue to be decided by the trier of fact."

¶7      The Municipal Court held a jury trial on November 7, 2019. The State presented the testimony of Officer Harris and entered into evidence at trial the dash-cam and body-cam videos of the stop. Officer Harris testified he was concerned Rana was driving under the influence of alcohol when he asked her to step out of the vehicle and that his common practice is to not tell a driver of a stopped vehicle why he is asking them to exit because it can create a safety issue because the driver could reach for weapons or attempt to flee. Officer Harris testified he eventually told Rana he suspected she was driving under the influence and wanted her to exit so he could make sure she was safe to drive, but Rana's repeated refusal to exit the vehicle hindered his ability to conduct a DUI investigation. At the close of the City's case, Rana did not move to dismiss the charges for insufficient evidence pursuant to § 46-16-403, MCA. Rana took the stand and testified in her own defense at trial, explaining she smelled like alcohol during the stop because someone had

6

spilled on her while she was at a concert the night of the stop. The jury ultimately convicted Rana of making an illegal left turn and obstructing a peace officer, while it acquitted her of DUI.[1] Rana appealed the Municipal Court's denial of her pretrial motion to dismiss to the District Court. After briefing by the parties, the District Court issued its Opinion and Order affirming the Municipal Court on May 26, 2020.

¶8 Rana appeals. We address the following restated issue: whether the Municipal Court erred by denying Rana's pretrial motion to dismiss.

¶9 Upon Rana's appeal from Municipal Court, the District Court functioned as an intermediate appellate court. *See* §§ 3-5-303 and 3-6-110, MCA. When a district court functions as an intermediate appellate court for an appeal from a lower court of record, we review the appeal de novo as though it were originally filed in this Court. *State v. Holland*, 2019 MT 128, ¶ 7, 396 Mont. 94, 443 P.3d 519 (citing *State v. Akers*, 2017 MT 311, ¶ 9, 389 Mont. 531, 408 P.3d 142). We examine the record independently of the district court's decision, reviewing the trial court's findings of fact for clear error, its discretionary rulings for abuse of discretion, and its legal conclusions for correctness. *Holland*, ¶ 7 (citing *State v. Meyer*, 2017 MT 124, ¶ 11, 387 Mont. 422, 396 P.3d 1265).

¶10 "We review de novo a ruling on a motion to dismiss in a criminal proceeding." *State v. French*, 2018 MT 289, ¶ 9, 393 Mont. 364, 431 P.3d 332 (citing *State v. Burns*, 2011 MT 167, ¶ 17, 361 Mont. 191, 256 P.3d 944). "We review a question on the sufficiency

---

[1] The failure to carry or exhibit insurance charge was dismissed and is not at issue here.

of the evidence to determine whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Booth*, 2012 MT 40, ¶ 7, 364 Mont. 190, 272 P.3d 89 (citing *State v. Azure*, 2008 MT 211, ¶ 13, 344 Mont. 188, 186 P.3d 1269).

¶11 To begin, we note that Rana specifically claims she "is not challenging the sufficiency of the [City's] evidence at trial," but is asserting the City could not present sufficient evidence regarding her mental state such that the obstruction charge should have been dismissed pretrial. A challenge to the sufficiency of the evidence through a pretrial motion to dismiss is "premature because such a challenge can only be made after the State has had an opportunity to present its evidence to the trier of fact." *State v. Nichols*, 1998 MT 271, ¶ 4, 291 Mont. 367, 970 P.2d 79. Accordingly, it is unnecessary to address any sufficiency of the evidence arguments regarding the evidence presented by the City at trial. What remains, then, is Rana's insistence the City could never present sufficient evidence she "knowingly" obstructed Officer Harris's duty, because she says in her briefing that she did not act with the intent to hinder him from doing his job, and therefore the Municipal Court erred by not granting her pretrial motion to dismiss. This circular logic presented by Rana below and on appeal would essentially render the obstruction of a peace officer statute a dead letter anytime a defendant claimed his or her intent was not to hinder the officer. We reject her argument.

¶12 First, as charged in this case, "[a] person commits the offense of obstructing a peace officer . . . if the person knowingly obstructs, impairs, or hinders the enforcement of the

criminal law[.]" Section 45-7-302(1), MCA. "It is no defense to a prosecution under this section that the peace officer was acting in an illegal manner, provided that the peace officer was acting under the peace officer's official authority." Section 45-7-302(2), MCA. "Knowingly" is defined in Montana's criminal statutes:

> a person acts knowingly with respect to conduct or to a circumstance described by a statute defining an offense when the person is aware of the person's own conduct or that the circumstance exists. A person acts knowingly with respect to the result of conduct described by a statute defining an offense when the person is aware that it is highly probable that the result will be caused by the person's conduct. When knowledge of the existence of a particular fact is an element of an offense, knowledge is established if a person is aware of a high probability of its existence. Equivalent terms, such as "knowing" or "with knowledge", have the same meaning.

Section 45-2-101(35), MCA. Obstructing a peace officer is a results-based offense, *see State v. Secrease*, 2021 MT 212, ¶ 12, 405 Mont. 229, 493 P.3d 335, and therefore Rana would act "knowingly" in this case if she was aware it was highly probable that the result of "obstruct[ing], impair[ing], or hinder[ing] the enforcement of the criminal law" would result from her refusal to exit the vehicle. *See State v. Eisenzimer*, 2014 MT 208, ¶ 7, 376 Mont. 157, 330 P.3d 1166.

¶13 Rana contends she was merely attempting to assert her constitutional rights to refuse a search, and invoking her constitutional rights, "even if done imperfectly, mistakenly or ignorantly cannot be the basis of this crime." Rana's "subjective intent is not the issue." *Eisenzimer*, ¶ 11. "The issue is whether [Rana] engaged in conduct that impeded the performance of [Officer Harris's] lawful duties under circumstances that made [Rana]

9

aware it was highly probable [her] conduct would impede the performance of those duties." *Eisenzimer*, ¶ 11. From our review of the record, it is clear sufficient evidence to support the obstruction charge going to trial existed. The Municipal Court viewed video evidence of Rana repeatedly refusing Officer Harris's requests and commands to exit the vehicle so he could continue his investigation. When reviewing this evidence in the light most favorable to the prosecution, it demonstrates Rana engaged in conduct which impeded Officer Harris's duties under circumstances which would make Rana aware it was highly probable her refusal to exit the vehicle would hinder Officer Harris's performance of his duties. At trial, the jury could then infer Rana's intent from her words, actions, and non-verbal communication clues present in the video. Rana simply asks us to substitute her interpretation of her behavior for that of the Municipal Court and the jury. We reject her invitation to do so.

¶14 Second, we would also note that the Municipal Court correctly found Officer Harris was not attempting to conduct a search by ordering Rana out of the vehicle. While field sobriety tests do constitute a search, *Hulse v. Mont. Dep't of Justice, Motor Veh. Div.*, 1998 MT 108, ¶ 33, 289 Mont. 1, 961 P.2d 75, "an individual has no reasonable expectation of privacy in his physical characteristics or behavior such as handwriting, speech, height, weight, gait, appearance or smell," and "an officer's observation of such physical traits during a valid traffic stop does not constitute a search." *Hulse*, ¶ 32 (citing *People v. Carlson*, 677 P.2d 310, 316 (Colo. 1984)). Stepping out of a vehicle is not a field sobriety test. While Officer Harris would likely have asked Rana to perform field sobriety tests

10

after she exited the vehicle, she was never asked to perform them at any time during the actual stop due to her refusal to exit the vehicle, and therefore her contention she was merely refusing to participate in SFSTs is unpersuasive.

¶15 Finally, it is uncontested Officer Harris had particularized suspicion to stop Rana's vehicle due to her illegal turn. "A statutory violation is sufficient by itself to establish particularized suspicion for an officer to make a traffic stop." *State v. Roy*, 2013 MT 51, ¶ 17, 369 Mont. 173, 296 P.3d 1169 (citing *State v. Haldane*, 2013 MT 32, ¶ 26, 368 Mont. 396, 300 P.3d 657). From there, Officer Harris developed a particularized suspicion Rana may be driving under the influence of alcohol due to the smell of alcohol coming from her, the 21-and-over wristband she was wearing, and her consistent confusion with Officer Harris's basic questions. Officer Harris therefore had the authority to require Rana to exit the vehicle for field sobriety tests to confirm or dispel his suspicion of Rana's impairment. *See Roy*, ¶ 18. As Officer Harris had lawful authority to order Rana to exit the vehicle to continue his DUI investigation, it is unnecessary to also determine whether his order was justified under *Mimms*.

¶16 While not necessary to our decision here, we would note Rana was free to contend at trial she did not intend to hinder Officer Harris's enforcement of the law by refusing to get out of her vehicle and, in fact, she did. The jury simply did not believe her. The Municipal Court did not err by denying Rana's pretrial motion to dismiss the obstructing a peace officer charge, and therefore the District Court did not err by affirming the Municipal Court's decision.

11

¶17 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶18 Affirmed.

/S/ INGRID GUSTAFSON

We concur:

/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR
/S/ JIM RICE