DA 21-0215

IN THE SUPREME COURT OF THE STATE OF MONTANA

2023 MT 50N

STATE OF MONTANA,

      Plaintiff and Appellee,

   v.

BRUCE ALAN GARAY,

      Defendant and Appellant.

APPEAL FROM:   District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. BDC 2019-436
Honorable Michael F. McMahon, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Laura Reed, Attorney at Law, Missoula, Montana

      For Appellee:

      Austin Knudsen, Montana Attorney General, Bree Gee, Assistant Attorney General, Helena, Montana

      Kevin Downs, Lewis and Clark County Attorney, Stephanie Robles, Deputy County Attorney, Helena, Montana

Submitted on Briefs:  January 4, 2023

Decided:  March 21, 2023

Filed:

_____
Clerk

FILED

03/21/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0215

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion, shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Bruce Alan Garay appeals his conviction in the Montana First Judicial District, Lewis and Clark County. A jury convicted Garay of Strangulation of a Partner or Family Member in violation of § 45-5-215(1)(a), MCA. Garay contends the District Court erred by allowing the State to introduce testimony that he "shoved meth" in the alleged victim's mouth, and by denying his motions for a mistrial based on other bad acts evidence. Alternatively, Garay argues that the cumulative effect of these errors deprived him of a fair trial. We affirm.

¶3 Garay was charged with two counts of Strangulation of a Partner or Family Member in violation of § 45-5-215(1)(a), MCA, based on incidents that occurred on April 6 and April 7, 2019. Garay asserted self-defense. He did not call any witnesses at trial. The State introduced testimony from the alleged victim, L.S., her sister, Officer Jacob Scavone and Sergeant Adam Shanks from the Helena Police Department, and Dr. Sheri Vanino, a licensed clinical psychologist specialized in psychological trauma. The State presented photographs of L.S.'s facial injury and a video with a transcript of Officer Scavone interviewing Garay.

¶4 L.S. testified that she met Garay in 2011 and maintained inconsistent contact with him until 2018. In 2018, Garay was living in another state, and he and L.S. established a

2

long-distance relationship. In the spring of 2019, Garay stayed at L.S.'s apartment in Montana during a visit. L.S. testified that on April 6, 2019, she and Garay got into an argument, and he put his arm around her neck from behind and caused her to pass out. That night, she stayed in a hotel room without Garay. L.S. returned to her apartment the following morning, April 7, 2019, and was surprised to find Garay there because he did not have a key. They began to argue again. L.S. testified that they were in her kitchen, and she remembered looking at knives as Garay was strangling her but did not recall whether she grabbed one or not. L.S. passed out, and when she regained consciousness, she had an injury to her head that she believed resulted from striking her head on the refrigerator when she passed out. L.S. testified that upon regaining consciousness, Garay shoved meth into her mouth, forcing her to ingest it. After Garay left the apartment, L.S.'s sister arrived and took L.S. to the hospital. On the way to the hospital, L.S. consumed psychedelic mushrooms she had stored in her purse.

¶5 Officer Scavone testified that he responded to a report that L.S. was being treated at the hospital on April 7, 2019. He testified that L.S. reported Garay strangled her, including earlier that day, and she injured her face on the refrigerator in the kitchen of her apartment when she passed out. Sergeant Shanks testified that when he interviewed L.S. a few days later, she recounted the story of Garay strangling her. Officer Scavone testified that six months after the initial interview of L.S., he conducted an interview with Garay in which Garay admitted that a physical altercation between he and L.S. occurred in the kitchen of her apartment on April 7, 2019. However, Garay claimed that he grabbed L.S. after she

3

swung a knife at him and, once she dropped the knife, she hit her head on the refrigerator when he let her go.

¶6    Garay moved for a mistrial on several occasions during the trial. The first motion was in response to L.S.'s testimony that she kept in touch with Garay "on and off" since 2011 because "[h]e was incarcerated some of the times." The District Court immediately sustained defense counsel's objection and instructed the jury to disregard L.S.'s statement, stating: "That means you cannot consider her last statement when you deliberate this case . . .[i]s that understood?" As the direct examination of L.S. continued, the prosecutor asked L.S. about her history of drug addiction and her recent sobriety. When the prosecutor asked L.S. whether she could "describe how drug use played into [her] relationship, if at all, with [Garay]," defense counsel objected after L.S. responded, "well, yes." The District Court sustained the objection. Outside the presence of the jury, the District Court heard the parties' arguments concerning testimony of L.S.'s and Garay's drug use. The District Court ruled that under the transaction rule, L.S. was allowed to testify about her own drug use and addiction issues and that Garay shoved meth into her mouth. However, the District Court limited L.S.'s testimony to the events subsequent to the allegation that Garay strangled L.S. in her apartment on April 7, 2019, and prohibited L.S. from testifying that she and Garay historically engaged in consensual use of methamphetamine. When the court offered to provide the jury a curative instruction about L.S.'s testimony regarding drug use with Garay, defense counsel declined the offer and moved for a mistrial. The court reserved its decision until the State completed its case-in-chief.

4

¶7　　Garay's second motion for a mistrial was after L.S. testified that Garay had previously provided her the psychedelic mushrooms she voluntarily consumed on April 7, 2019. The court sustained Garay's objection, advised it was striking the statement from the record, instructed the jury to disregard the statement in its deliberations, and ordered the prosecutor to move on. Garay argued a mistrial was warranted because he would not receive a fair trial after L.S. alleged that Garay provided her with the psychedelic mushrooms. Once again, the court reserved its decision until the State completed its case-in-chief.

¶8　　Garay moved for a mistrial a third time after three other instances of testimony to which defense counsel objected. During cross-examination of L.S., defense counsel asked whether her sexual activity with Garay had been consensual. L.S. agreed that it had been consensual but claimed that there had been "an incident [she] had not yet discussed here. . . ." When the State asked L.S. whether she had previously "attempt[ed] to obtain an order of protection against" Garay, defense counsel objected, and the Court sustained the objection. During redirect examination of Sergeant Shanks, the prosecutor asked whether Garay was lawfully present in L.S.'s home on April 7, 2019. After the Court did not allow Sergeant Shanks to answer the question, defense counsel objected to the prosecutor's line of questioning. The court excused the jury and instructed the prosecutor not to continue with her line of questioning because it called for a legal conclusion that was not appropriate for Sergeant Shanks to answer. When the jury returned, the court instructed the jury to "disregard the last question asked by the State to the witness and any possible answer he may have provided or any inference from that. . . ."

5

¶9 At the close of the State's case-in-chief, Garay again moved for a mistrial. This time, the court reserved its decision until the jury returned a verdict. The jury acquitted Garay of Count 1 and found him guilty of Count 2. The District Court denied Garay's motions for a mistrial, reasoning that the inadmissible evidence did not have a prejudicial effect on the jury or contribute to the conviction.

¶10 This Court reviews a district court's evidentiary rulings for an abuse of discretion. *State v. Zimmerman*, 2018 MT 94, ¶ 13, 391 Mont. 210, 417 P.3d 289 (internal citation omitted). A district court "has broad discretion in determining the relevancy and admissibility of evidence." *State v. French*, 2018 MT 289, ¶ 28, 393 Mont. 364, 431 P.3d 332. We review a district court's denial of a motion for a mistrial for abuse of discretion. *State v. Krause*, 2021 MT 24, ¶ 11, 403 Mont. 105, 480 P.3d 222. "We apply a deferential standard to the district court because the trial judge is in the best position to make the determination." *State v. Pierce*, 2016 MT 308, ¶ 17, 385 Mont. 439, 384 P.3d 1042 (internal citation omitted). "A mistrial is an extreme remedy and may only be granted for manifest necessity as required by the ends of justice." *State v. Denny*, 2021 MT 104, ¶ 13, 404 Mont. 116, 485 P.3d 1227 (internal citation omitted). A district court abuses its discretion when it "acts arbitrarily without the employment of conscientious judgment or exceeds the bounds of reason, resulting in substantial injustice." *Zimmerman*, ¶ 13 (internal quotation and citation omitted).

¶11 Garay contends that the District Court abused its discretion when it allowed the State to introduce L.S.'s allegation that Garay shoved meth in her mouth after strangling her on April 7, 2019. The transaction rule states: "Where the declaration, act, or omission forms

6

part of a transaction which is itself the fact in dispute or evidence of that fact, such declaration, act, or omission is evidence as part of the transaction." Section 26-1-103, MCA. "Admissibility under the transaction rule is predicated on the jury's right to hear what [transpired] immediately prior and subsequent to the commission of the offense charged, so that they may evaluate the evidence in the context in which the criminal act occurred." *State v. Detonancour*, 2001 MT 213, ¶ 29, 306 Mont. 389, 34 P.3d 487 (internal quotation and citations omitted). Evidence admissible under the transaction rule may still "be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." *Detonancour*, ¶ 31 (citing M. R. Evid. 403). M. R. Evid. 403 "does not require exclusion of relevant evidence simply because it is prejudicial." *State v. Pulst*, 2015 MT 184, ¶ 18, 379 Mont. 494, 351 P.3d 687. "Indeed, most evidence offered by the prosecution in a criminal trial will be prejudicial to the defendant." *Pulst*, ¶ 18, (internal citations omitted). "Acts of a defendant subsequent to the alleged commission of the crime, and intertwined therewith, are highly probative," and "[w]hether the probative value is outweighed by the prejudicial effect is within the trial court's discretion." *Detonancour*, ¶¶ 29, 31 (internal citations omitted).

¶12 The District Court allowed the State to introduce L.S.'s testimony that Garay shoved meth in her mouth because it reasoned that the allegation was admissible under the transaction rule in that it occurred immediately subsequent to the commission of the events upon which Count 2 was based. Garay argues that the District Court violated the transaction rule because the court did not limit the use of the allegation. The District Court was not required to limit the use of L.S.'s allegation because it formed part of the

transaction of events when Garay strangled L.S. on April 7, 2019. It is not as if this occurred at some remote period or place, removed from the strangulation. L.S. testified that Garay shoved the meth in her mouth when she regained consciousness after having passed out from the strangulation. The District Court limited L.S.'s testimony to the events subsequent to the acts upon which Count 2 was based and prohibited L.S. from testifying that she and Garay historically engaged in consensual use of methamphetamine. The District Court did not abuse its discretion by admitting the testimony under the transaction rule.

¶13 Garay argues the District Court erred by allowing L.S.'s testimony that Garay shoved meth into her mouth because the allegation did not prove or disprove any element of the charged offense. But Garay's actions of shoving meth into L.S.'s mouth were, if nothing else, probative as it pertained to his claim of self-defense. Garay claimed he choked L.S. while defending himself from her alleged assault. Scouring the annals of criminal justice cases, we are hard-pressed to find another instance of a person defending himself with a handful of meth to the mouth. Garay's actions are hardly consistent with a claim of self-defense.

¶14 Garay also fails to demonstrate that the allegation's probative value was substantially outweighed by any prejudicial effect. While a jury no doubt looks unfavorably at someone who forces another to ingest drugs against their will, M. R. Evid. 403 "does not require exclusion of relevant evidence simply because it is prejudicial." *Pulst*, ¶ 18. Garay cannot have it both ways—contending he was acting in self-defense while seeking to exclude testimony regarding actions that are wholly inconsistent with that

8

contention because they are prejudicial. The District Court did not abuse its discretion when it allowed the State to introduce L.S.'s allegation that Garay shoved meth in her mouth after strangling her on April 7, 2019.

¶15 Garay contends that the District Court abused its discretion when it denied his motions for a mistrial. Garay argues that the District Court should have granted his motions for a mistrial because the State and its witnesses repeatedly made improper comments during trial concerning Garay's prior incarceration and allegations of bad acts. Garay asserts that the cumulative effect of these comments created unfair prejudice against him and deprived him of a fair trial.

When we review a district court's denial of a motion for a mistrial, we first consider whether the disputed comments were improper; if so, we consider "whether the improper comments prejudiced the defendant's right to a fair trial." *French*, ¶ 24 (internal citation omitted). A mistrial should be denied when the errors "do not affect the substantial rights of the defendant and the record is sufficient to establish the defendant's guilt." *Denny*, ¶ 16 (internal citation omitted). A mistrial is appropriate "when a reasonable possibility exists that inadmissible evidence may have contributed to the conviction." *Denny*, ¶ 16 (internal quotation and citation omitted).

¶16 Other than the instance when defense counsel interrupted L.S.'s comment concerning non-consensual sex and ended its own line of questioning, the District Court either interrupted the improper testimony itself or sustained objections by defense counsel. Therefore, we treat this testimony as improper and must determine whether it prejudiced Garay's right to a fair trial.

9

¶17 Garay argues that his right to a fair trial was prejudiced by L.S. testifying that she kept in touch with Garay "on and off" since 2011 because "[h]e was incarcerated some of the times." The record does not support Garay's assertion that this testimony prejudiced his right to a fair trial. The District Court sustained the objection by defense counsel before L.S. could complete her sentence. The court then provided a curative instruction to the jury. Garay does not argue that the curative instruction was incorrect, and there is no evidence in the record to overturn our presumption that juries follow the law provided by courts. *See State v. LaFournaise*, 2022 MT 36, ¶ 41, 407 Mont. 399, 504 P.3d 486 ("We have long noted that juries are presumed to follow the law provided by courts.").

¶18 Garay argues that his right to a fair trial was prejudiced because the State and its witnesses made improper comments concerning allegations of bad acts. Reversal on a claim of prejudicial prior bad acts rests on whether the jury's conviction was soundly achieved. *State v. Torres*, 2021 MT 301, ¶ 44, 406 Mont. 353, 498 P.3d 1256 (internal quotation and citations omitted). "[E]vidence of prior bad acts rises to unfair prejudice only if it arouses the jury's hostility or sympathy for one side without regard to its probative value, if it confuses or misleads the trier of fact, or if it unduly distracts from the main issues." *Torres*, ¶ 42 (internal quotation and citations omitted).

¶19 Garay asserts conclusory allegations that he was prejudiced by the improper comments. But except for the comment that defense counsel interrupted himself, the District Court immediately sustained objections by defense counsel or interrupted the testimony itself. The court also instructed the jury to disregard testimony and redirected the attention of the parties and jury away from irrelevant and potentially prejudicial

10

testimony. Garay's conclusory allegations do not establish he was prejudiced by the improper comments. *See State v. Smith*, 2020 MT 304, ¶ 16, 402 Mont. 206, 476 P.3d 1178, ¶ 16 ("The defendant must establish prejudice; a mere allegation of error without proof of prejudice is inadequate . . . .").

¶20 Garay's claims that the jury was prejudiced against him are also belied by the jury's verdict. Although the jury convicted Garay of Count 2, it acquitted him of Count 1. In *State v. Colburn*, 2018 MT 141, 391 Mont. 449, 419 P.3d 1196, we held that the admission of potentially prejudicial evidence "[c]learly did not distract or incite the jury's hostility towards" the defendant when the jury acquitted him of some charges. In this case, the jury was presented with two identical charges—Strangulation of a Partner or Family Member— occurring on back-to-back days. There is nothing in this record to suggest that the jury's hostility was incited towards Garay on one count and not the other. Rather, the record suggests that the jury weighed the evidence, including L.S.'s credibility, and determined that the State carried its burden as to one of the counts but not the other.

¶21 Garay argues that the cumulative effect of the improper comments created unfair prejudice against him and deprived him of a fair trial. Specifically, Garay argues that "the District Court's errors of not declaring a mistrial based on the jury's exposure to [Garay]'s prior incarcerations and other uncharged bad acts, combined with permitting the State to introduce allegations that [Garay] 'shoved meth' in L.S.'s mouth, were mutually exacerbating."

¶22 "Where individual errors alone are insufficient to warrant reversal, the sum of those errors can nevertheless serve as a basis for reversal under the cumulative error doctrine."

11

*Denny*, ¶ 24 (internal citation omitted). However, "[a] [d]efendant is entitled to a fair trial, not to a trial free from errors," and "the cumulative effect of errors will rarely merit reversal." *Smith*, ¶¶ 16-17 (internal citation omitted).

¶23 As it pertains to L.S.'s testimony that Garay shoved meth in her mouth, we have held that the District Court did not err by allowing this testimony. As it pertains to the comments of prior bad acts, we have considered their potential prejudicial effect, both individually and cumulatively. As noted above, the record suggests that the jury weighed the evidence, including L.S.'s credibility, and determined that the State carried its burden as to one of the counts but not the other. Garay is not entitled to reversal based on cumulative error.

¶24 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. This appeal presents no constitutional issues, no issues of first impression, and does not establish new precedent or modify existing precedent. Affirmed.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ JIM RICE